# M'Cormick *against* Crall.

Upon the plea of "covenants performed," in an action upon an agreement for the purchase and sale of land, the defendant may give in evidence a tender before suit brought, of the amount of purchase money, which he alleged to be due to the vendor.

A party to a suit is competent to prove the service of a notice upon the adverse party, that a suit had been brought against him by a third person, which affected his rights in the cause then being tried.

In order to establish the fact that a party knew a certain debt was paid, it is not competent for the adverse party to give evidence that he was present at an arbitration when the fact was proved that it was paid; he may either give in evidence the record and judgment in that suit, or call the witnesses to give the same evidence upon which the claim was defeated.

The general rule is, that if land be sold by articles, and the vendee enter into possession, he must pay interest, although the title be not made at the time stipulated; yet this is not universally so: where there has been wilful and vexatious delay, or gross laches in the vendor, in consequence of which the purchase money lies unproductive, it may be left to the jury to say whether the plaintiff shall recover interest.

A conditional verdict is only employed to effect an equity, and never to relieve a party from a difficulty occasioned by his not being ready to establish those facts which are put in issue in the cause.

ERROR to the common pleas of *Cumberland* county.

This was an action of covenant brought by Hugh M'Cormick, the plaintiff in error and plaintiff below, against Christian Crall, administrator of Mathias Crall, deceased, to recover a balance of purchase money alleged to be due on certain articles of agreement between the plaintiff and intestate, made on the 6th of December 1809, on the sale of a tract of land.

It appeared in evidence that the plaintiff was the owner of a tract of land situate partly in Cumberland and partly in York county, containing one hundred and sixty-nine acres, which had formerly belonged to John Shoff, who had encumbered it by a mortgage and bonds to one M'Meens, and died seised, leaving six children. The land was afterwards taken by his two sons, John and Jacob, at appraisements under proceedings in the orphans' courts of the respective counties. That part of the land in Cumberland (one hundred and seven and three-fourth acres) was taken by Jacob Shoff, who gave recognizances for paying the widow her interest, and the principal thereof to the heirs at her decease, and also to pay the shares of the heirs. The land in York county was taken by John Shoff, and similar recognizance given. On the 4th of August 1804, Jacob and John Shoff agreed to sell to the plaintiff, clear of all incumbrance, the one hundred and seven and three-fourth acres in Cumberland county, he paying the heirs their shares, paying M'Meens's bonds, the widow's interest, and the principal to the heirs at her death; and also the York county land, at the appraisement. On the 2d of April 1806, the plaintiff received a deed for

the land in Cumberland, and on the 24th of September 1810, for the land in York.

On the 6th of December 1809, the plaintiff covenanted with Mathias Crall, the defendant's intestate, to sell and convey to him the whole one hundred and sixty-nine acres, subject to the dower of the widow, which had not been properly ascertained. Crall covenanted to pay 1900 pounds, viz: 800 pounds on the 1st of April 1810, " or on the delivery of an indisputable title for the premises, clear of all incumbrance," out of which the principal of the said dower should be detained by Crall, he paying the interest to her yearly, and securing the payment of the principal to M'Cormick at her death; the residue to be paid in alternate payments of 75 pounds and 100 pounds each, on the 1st of April yearly, to be secured by bonds and judgment; the plaintiff to give the intestate peaceable possession on the 1st of April next, or on paying and securing the purchase money. Crall entered into possession, and so continued till the year 1817, when he died, leaving several children, and the defendant administered. Various payments were made by the intestate to M'Meens, and to the plaintiff, in the years 1810, 1811, 1812 and 1813, amounting to nearly 2000 dollars, and the interest was paid to the widow till her death, in August 1827.

In the year 1820, no deed having been executed by the plaintiff, a meeting took place between the parties and their counsel, in Carlisle, and two deeds for the respective premises were drawn and executed, and, in pursuance of an agreement then made, the defendant paid to the plaintiff the sum of 1225 dollars, making, with the former payments, a sum about equal to the instalments then due, deducting the widow's dower; and, at the same time, the deeds were deposited in the hands of Mr Parker, the counsel of the defendant, as escrows, not to be delivered, (according to the testimony of Mr Alexander, counsel for the plaintiff,) until the balance of the purchase money should be paid. But, according to the testimony of Mr Parker, the defendant's counsel, the defendant told the plaintiff he was anxious to have the thing settled; he had the money; was administrator; his brothers and sisters were anxious to have the thing settled; so that the money might not be unproductive; and it was then agreed that the payment above mentioned should be made, the plaintiff making a deed and leaving it with some one till he could make the title complete. That plaintiff said he could not make the title; there were some matters to be settled; (which witness understood arose out of the recognizances;) but he would have it done as soon as he could: with other evidence to the same effect. The receipt given for the money was a special one.

Evidence was given by the defendant that after this, in 1821, two suits were brought on the recognizance, and served on him as terre-tenant, to which he appeared, and in one pleaded. The plaintiff gave in evidence three suits, brought in 1828 against the administrator of Jacob Shoff, on the recognizance by John Shoff,

[M'Cormick v. Crall.]

Mentzer and Browers and wife, terminated in June 1832 by awards for the defendant. The only parties of the six children of John Shoff who entered satisfaction on the record were John Shoff, the plaintiff M'Cormick and the guardian of Eliza, for what was due on the Cumberland land before the widow's death, and the plaintiff M'Cormick, Jacob's administrators and Eliza's guardian in York county. The defendant contended they were all paid, and produced records of other suits before and after 1820, to show it.

It was also proved by a witness on behalf of the defendant, that in June 1831 the defendant called on the plaintiff in Lancaster county and tendered him 1905 dollars, and demanded a title agreeably to the articles. The plaintiff said he was not ready to receive the money, because there were some circumstances depending that were not settled. The defendant asked him to settle with him or he would leave it to men. The plaintiff declined till he could see his attorney. The defendant asked him to come up and settle as soon as he could. The plaintiff said he would be up after harvest. He repeated several times he wished he had been ready to receive it. In August 1831 the defendant deposited this money in bank, to his own credit, and it there remained. A sum of 760 dollars had been deposited by him in bank in June 1829, and continued until May 1831. A witness for the plaintiff swore, that five or six years before the trial, the plaintiff told the defendant he had the deeds ready, and was desirous to get the money. He had not the deeds with him, but said he would give a refunding bond, or any other security; was very necessitous for money, &c. Defendant said it did not suit him. Mr Alexander, for plaintiff, also testified, that before the institution of this suit he had got the two deeds from Mr Parker (one of which had been since lost) and tendered them to the defendant, and wished him to pay the balance. The defendant stated he had made an offer of a sum of money to the plaintiff: witness said it was not near enough; he would have to pay a great deal more. This, he supposed, was in 1832 or 1833. This suit was brought to November term 1833.

The jury gave a verdict for the plaintiff for 1950 dollars, and the plaintiff alleges that there was a large arrear due him beyond that, for interest.

Eleven errors were assigned, three of which are founded on the bills of exception to evidence, and the remainder on the answers of the court to points propounded by the defendant; all of which are set out with distinctness in the opinion of the court.

*Knox* and *Alexander*, for plaintiff in error.
*Biddle* and *Watts*, for defendant in error.

The opinion of the Court was delivered by

SERGEANT, J.—The first bill of exception is to the admission by the court below of proof of the tender of 1905 dollars, by the de-

VI.—2 B

[M'Cormick v. Crall.]

fendant to the plaintiff, in August 1831. The objection is, that there was no plea of tender, or payment of the money into court. There was, however, the plea of covenants performed and issue thereon, and under this plea any evidence was admissible that went to show that the defendant had offered to pay the purchase money, and thus to relieve himself from the payment of interest. It was not strictly a tender; for in every legal tender, the party admits the money tendered to be due and payable. But here the defendant made the offer only on condition that the plaintiff made him a title, which he contended the plaintiff did not do. It was proof of readiness and willingness on his part to perform his covenant, provided the plaintiff performed the covenant on his part, and as such properly received.

The second bill of exception is to the admission of the defendant to prove that he served a copy of a notice on the plaintiff, in March 1821, of certain suits brought against Shoff on the recognizances with notice to the defendant. In receiving this proof the court has not gone further than many previous cases warrant, and indeed seems to be sanctioned by the constant practice in our tribunals. In Jordan *v.* Cooper, 3 *Serg. & Rawle* 575, it is said, that in Pennsylvania the practice is universal for a party to a suit to prove the service of notice, to produce papers and of taking depositions. In Kidd *v.* Riddle, 2 *Yeates* 444, the plaintiff was held to be a good witness to prove the service of notice on a justice of the peace, thirty days before process issued. In Snyder *v.* Woelfly, 8 *Serg. & Rawle* 328, the plaintiff was admitted to prove the loss of a ticket, after other evidence given, that it had been in his possession. So, at the present term of this court, after evidence of the plaintiff's possession of a promissory note, he was held to be competent to prove its loss. These and other cases seem to go quite as far as the present, and we, therefore, think this error not sustained.

The third bill of exception is to the rejection of the following evidence, offered by the plaintiff. The plaintiff gave in evidence, suit, No. 125, November 1820, M'Cormick *v.* Bryson's administrators, and offered to accompany it with proof, that William Bryson, as agent of Mrs Mentzer, (one of the heirs of John Shoff, deceased,) received, in 1805, a large sum of money, alleging it to be due out of her father's estate, from the plaintiff. That the above suit was brought to recover back a portion of the money paid him, on the ground that she had, before that, been paid off, except a small sum which was agreed to be credited on the payments made by Hugh M'Cormick. That on the trial, defendant was present and was a witness, when it was established that Mrs Mentzer had been paid; and on that ground plaintiff obtained a verdict for the excess paid her by him. All which was known to defendant, and the fact of the payment of incumbrances was there fully gone into, both on the trial, before the arbitrators in 1821, and

[M'Cormick v. Crall.]

in court in 1826. The object of the proof was stated to be to show the knowledge of the defendant that the recognizances were paid.

This evidence seems to have been rejected on account of its generality, in attempting to show what took place on a trial before arbitrators and in court, otherwise than by the pleadings and evidence in the cause; and also in offering to show, not the acts and declarations of the defendant, but his knowledge of every thing that occurred, in or out of the record. The proper kind of evidence to prove matters which have been in controversy on a former trial, is, in the first place, the evidence given on that trial, and then in order to affect a third party with it, his acts and declarations ought to be shown. This was the course the cause eventually took after this bill had been sealed; for, the offer being renewed by the plaintiff to go into evidence, that upon the trials in these suits the whole claims upon the recognizances in Cumberland and York were, by consent of counsel, taken into consideration, investigated, and decided, accompanied with the evidence given on the trials, the defendant's counsel made no objection to that part of the offer relating to the evidence given on the trials, and the court considering that it embraced, substantially, the import of the whole, admitted it. The plaintiff then relinquished it.

I come now to the remaining errors, which are to the answers of the court. These it is not necessary to repeat from the paper book, because we are of opinion, that there has been no error shown. In relation to the claim of interest, which was the real matter in dispute between these parties, the court stated the law correctly to the jury, leaving them to judge of the credit due to the testimony, and under the circumstances of the case, to give interest or allow it; and whether it should or should not be allowed, was a matter for the jury to determine. The case was a peculiar one. The plaintiff, in 1809, articled to convey land, then subject in his hands to various incumbrances, the defendant's intestate covenanting to pay, by a certain time, or on the delivery of an indisputable title clear of all incumbrances. The intestate was not bound to pay or secure the money until such title was given. He, however, paid various sums of money, from time to time, on account of the instalments; but the plaintiff delayed compliance with his stipulation; and matters so continued until the intestate died, the right to the land descending to his children, and the task of attending to the contract devolving on the defendant, his administrator. In the year 1820, the plaintiff being pressed for money, though, by his own declaration, unable to complete the title, induced the defendant to pay up a large additional sum, making, with prior payments, somewhere about the amount then due, and the plaintiff executed deeds which were agreed to be left in the hands of an attorney as escrows, to be delivered, according to the testimony of one witness, only when the title should be complete.

[M'Cormick v. Crall.]

After this a moiety, or more of the claims on the recognizances remained outstanding on the record, without satisfaction entered, and various suits continued to be brought upon them, and were depending a long time. A purchaser under a contract for a good title, is entitled to a marketable title, a title which he may sell and dispose of to others, or if he chooses to keep the land, may feel satisfied that he can settle it securely by deed or will, on his children or others. The vendor is bound to take the necessary steps and use due diligence to place the title on a footing that will leave it beyond dispute. This the plaintiff expressly engaged to do, by his article and by accepting payment under it. The vendee here could not, himself, make a legal title to another whilst his vendor declined to do so to him, and proclaimed himself unable. The defendant interposed no difficulties and affected no delay; he seems to have been not only willing, but anxious to comply and settle the contract; as well for his own relief, as administrator, as for the satisfaction of the family, who must have been subjected to inconvenience and prejudice, by the long delay. The plaintiff does nothing to make the title, from 1809 to 1820; even after the agreement of 1820, the deeds were suffered to lie in the attorney's hands; suits were brought on the recognizances, and process served on the administrator; and the claims on them remained in the same unsettled and unsatisfactory state; though the death of the widow occurred in 1827, and the remainder of the money became then payable. At length, in 1831, the defendant tendered the 1905 dollars, a sum which, in addition to former payments, exceeded the amount of the principal of the purchase money. The plaintiff still procrastinated, declined receiving it, said circumstances were not yet settled, and the defendant placed the money in bank, where it has since remained. The subsequent demand and offer by the plaintiff, to give a refunding bond or security, was one which the defendant was not bound to accept in lieu of the title stipulated. These, with other facts, were circumstances for the jury to decide how far it was just and equitable in a case so peculiarly situated to charge the defendant with interest. For, although, the general rule is, that if lands are sold by articles and the vendee enters into possession, he must pay interest, though the deed was not made at the time required, yet this is not universally so. There are cases where it may be left to the jury to say whether the plaintiff shall recover interest; as where there has been wilful and vexatious delay, or gross laches in the vendor, in consequence of which, the purchase money lies unproductive. 6 *Binn.* 437; 16 *Serg. & Rawle* 268.

The plaintiff also assigns for error, that the court instructed the jury, that the conditional verdict, asked for by the plaintiff, could not be found by them. This was, that the jury should give a verdict for the plaintiff with condition, that it should not be executed till the lost deed was supplied, and thus dispense with the

necessity of producing a good and sufficient deed on the trial, in lieu of the one that was lost.

A conditional verdict has been employed in Pennsylvania to effect an equity which could not be reached by the ordinary form of the verdict; but there is no instance in which it has been adopted, to relieve the plaintiff from a difficulty occasioned by his not being ready to establish those facts which are put in issue in the cause. Should we give in to this practice, we should gradually change the system of our pleadings and proofs, encourage remissness in suitors, and produce an increased delay and litigation. The court below was right in refusing to give the instruction asked.

Judgment affirmed.