NASHUA & LOWELL R. CORP. v. BOSTON & LOWELL R. CORP.

(Circuit Court of Appeals, First Circuit. February 1, 1894.)

No. 25.

1. DISMISSAL OF APPEAL—DEFECTIVE TRANSCRIPT—CERTIORARI.
   A clerk's certificate, which shows that certain parts of the record were omitted from the transcript by direction of appellant's attorney, is nevertheless sufficient to bar a motion to dismiss the appeal, when it does not

appear that the omitted parts are "necessary to the hearing" (C. C. A. Rule 14, par. 3, 47 Fed. vii.); and in such case the appellee, if he thinks the transcript defective, must resort to a certiorari or other remedy.

**2. TRANSCRIPT ON APPEAL—WHAT TO CONTAIN.**

On an appeal in equity, in the absence of joint stipulation for simplifying the transcript, the clerk should send up the whole of the record, in the strict sense of the word, made as directed by Rev. St. § 750, except that, when there has been a previous appeal, matters preceding the mandate should ordinarily be omitted; and, if any parts thereof are omitted, even by joint stipulation, their nature should be indicated. But as to the proofs, entries, and papers on file "necessary to the hearing of the appeal" (Rev. St. § 698), the clerk, in the absence of joint stipulation, is to be guided ordinarily by the selections of the appellant's solicitor.

**3. PARTIAL APPEALS.**

It is no ground of objection that an appeal is expressly limited to a part of the decree below, when this is the only part from which the appellant could appeal; especially in view of the fact that under C. C. A. Rule 11, which requires an assignment of errors to be filed simultaneously with the appeal, the legal effect may be, in any case, a partial appeal.

**4. INTEREST—WHEN ALLOWED.**

When all the equities of a suit growing out of contract have been settled by an appellate court, and the cause remanded for the taking of an account pursuant to the opinion, the question of interest being left open, it is the duty of the court below to apply the ordinary rule of the American cases, which allows interest from the filing of the bill.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

This was a suit by the Nashua & Lowell Railroad Corporation against the Boston & Lowell Railroad Corporation, upon a contract in writing concerning the business of the two roads. The circuit court dismissed the bill, but complainant appealed to the supreme court, which held that complainant was entitled to an accounting, and accordingly reversed the decree, and remanded the cause. 10 Sup. Ct. 1004. The circuit court then ordered a reference to a master for the purpose of taking the account, and thereafter overruled exceptions filed by both parties to his report, and confirmed the same. 49 Fed. 774. From that decree complainant appealed to this court. Defendant moved to dismiss the appeal, and on September 6, 1892, this motion was denied, in an opinion delivered by Mr. Justice Gray. 2 C. C. A. 542, 51 Fed. 929. The cause has now been heard on the merits of the appeal

Francis A. Brooks, for appellant.

Josiah H. Benton, Jr., for appellee.

Before PUTNAM, Circuit Judge, and WEBB and ALDRICH, District Judges.

PUTNAM, Circuit Judge. This cause comes into this court on an appeal by the Nashua & Lowell Railroad Corporation, taken April 29, 1892, with a citation returnable May 28, 1892. May 5, 1886, a decree had been entered in the circuit court dismissing the bill, from which an appeal was taken to the supreme court, and was there duly considered on the merits, and an opinion rendered, found in 136 U. S. 356, 10 Sup. Ct. 1004, closing as follows: "The decree

of the court below will be reversed, and the cause remanded for further proceedings in accordance with this opinion." The substance was that a portion of the claim made by the bill was disallowed and a portion allowed; but further details need not here be cited, as they fully appear in the opinion of the supreme court. The mandate of that court was issued May 26, 1890, and received and filed in the circuit court May 29, 1890, and it followed the concluding paragraph of the opinion already cited. Thereafterwards, July 21, 1891, the circuit court sent the case to a master by an order which in its preamble recited the mandate of the supreme court and referred to its opinion, and which directed the master "to take and state the account to which the complainant is entitled, and as set forth in the preamble hereto."

The parties appeared before the master, and the account was duly taken, showing the amount due stated in the final decree in the circuit court, which will be hereafter referred to. At this stage of the case the Nashua & Lowell Railroad Corporation claimed interest—First, from the dates when the various amounts were received by the Boston & Lowell Railroad Corporation; second, from the date of the filing of the bill, April 17, 1880; and, third, from the date of the filing of the amended bill, September 15, 1883; none of which was allowed. Exceptions to the master's report were duly taken, and were disposed of in accordance with an opinion of the circuit court which had been filed February 14, 1891, as follows:

"In view of the nature of the contract between the plaintiff and defendant corporations, and of the decision of the supreme court upon appeal, and of the rules of law governing the allowance of interest, I think it would be inequitable to permit the plaintiff to recover interest upon the basis claimed. I am of the opinion, therefore, that the plaintiff is entitled to a decree for $26,124, with interest from the date of the mandate."

A final decree was entered accordingly, from which appeal was seasonably taken, as already stated.

The bill was filed, not only against the Boston & Lowell Railroad Corporation, but also against Hocum Hosford and Charles E. A. Bartlett. The final decree takes no notice of respondents Hosford and Bartlett, and is technically defective in that respect. They were at the most mere stakeholders. The fund in controversy came into the hands of the Boston & Lowell Railroad Corporation before the filing of the bill. No party has pressed for relief against either Hosford or Bartlett, and the decree of the court below should be at least so far modified as to dismiss the bill as against them, without costs.

The only matter in controversy in this court, or substantially in controversy in the court below after the receipt of the mandate from the supreme court, has been the matter of interest, already referred to.

May 31, 1892, the Boston & Lowell Corporation filed in this court a motion to dismiss the appeal, for reasons therein stated, and which need not be set out here at length. When that motion came on for

hearing, it also filed another motion to dismiss, the substance of which is stated in the opinion filed in this cause September 6, 1892, as follows:

"That the appeal was not from the decree of the circuit court, but from a part only of that decree; and that the transcript transmitted to this court was a copy of but a part of the record below." 2 C. C. A. 542, 51 Fed. 930.

The opinion referred to said, touching that second motion, as follows:

"After one motion to dismiss had been filed and set down for hearing, the appellee had no right to file a second motion to dismiss without leave of the court, and such leave should not be granted upon formal grounds only. If the appeal is wholly insufficient to sustain the jurisdiction of this court, the court may, of its own motion, take notice of the insufficiency at the hearing on the merits. If the transcript of record is imperfect, the appellee might have suggested a diminution of the record, and asked for a certiorari. It would doubtless have been more regular for the appellant to file in this court a complete transcript, if not of the whole record of the circuit court, yet of so much thereof, at least, as set forth the entire opinion and mandate of the supreme court, and all the subsequent proceedings in the court below. But the imperfections of the transcript in this respect were not made a ground of the original motion to dismiss; nor does the supplemental motion point out what, if any, of the omitted parts are material. The whole opinion of the supreme court is published in the official reports, and there is no controversy as to its scope. A copy of an opinion of Colt, J., filed February 24, 1891 (omitted in the transcript), proceeding upon the same ground as his opinion after the return of the master's report, has been supplied by the appellant by direction of this court; and the appeal is from so much of the final decree as the appellant complains of. Under these circumstances, both motions to dismiss the appeal must be denied." 2 C. C. A. 545, 51 Fed. 931.

Thereafterwards the merits of the appeal were fully argued, and certain ad interim and incidental motions and proceedings were had, which need not be recited here at length, but which resulted in elaborate and full rearguments of the various propositions touched on in the foregoing extracts from the opinion filed September 6, 1892. It will be noticed that this required a transcript of only the opinion and mandate of the supreme court, and the proceedings in the court below subsequent to the mandate. It called attention to the fact that the second motion to dismiss did not point out what, if any, of the omitted parts were material. It also stated that, if the transcript was imperfect, the appellee might have suggested a diminution of the record, and asked for a certiorari. Notwithstanding the full reargument of the points covered by these propositions, and the claim pressed on the court that, inasmuch as the interest was disallowed by the court below on the ground that it would be inequitable to permit the original complainant to recover it, this court cannot revise the equities of the case unless it has before it the entire record which was before the court below, a full reconsideration of all these propositions leads to the reaffirmation of the conclusions of the opinion filed September 6, 1892, and also to the additional conclusion that every substantial matter is before this court which was before the court below, with reference to the disposition of the question of interest. Although the opinion in the cir-

cuit court, filed February 24, 1891, disposing of the question of interest, is not strictly a part of the record, yet it is not improper to refer to it in a negative sense, in that it shows that the learned judge of that court took into consideration only the nature of the contract between the parties, the decision of the supreme court, and the rules of law governing the allowance of interest, and that nothing in it suggests to this court that anything of a substantial character bearing on the present controversy is omitted from the record submitted to us. The certificate of the clerk, appended to the record in this court, contains the following:

"That the foregoing is a true copy of the record, * * * except that certain portions thereof are omitted in this copy by direction of complainant's counsel. Mr. Brooks, the omitted portions being indicated by stars; and except, also, that certain other portions are omitted, and in place thereof memoranda are inserted showing where the same are to be found in the printed matter annexed hereto."

It concludes as follows:

"I further certify that I make this certificate at the request of counsel for complainant in said cause."

In Blitz v. Brown, 7 Wall. 693, where there was no certificate by the clerk, the writ of error was dismissed, and leave to cause the certificate to be supplied was denied; but in the later case of Hodges v. Vaughn, 19 Wall. 12, leave was granted the plaintiff in error to withdraw the transcript and supply the certificate. In U. S. v. Gomez, 1 Wall. 690, a certificate from the clerk of the court below that the record was complete "except the transcript sent up," etc., was accepted as sufficient to bar a motion to dismiss, and to put the party appealed against to a suggestion of diminution and a motion for certiorari; and the same conclusion was reached in The Rio Grande, 19 Wall. 178, 182, 183, 188, where the first transcript contained the usual certificate, but an addition to it purported to include only extracts. In view of the pointed way in which the supreme court has condemned sending up unnecessary papers and proceedings, and of the other matters hereinafter referred to, a modified certificate can well be accepted, as was done in the two cases last cited; or the certificate in the usual terms must be construed as covering only what is necessary to a hearing in this court. As the distinction is a mere matter of form, we think the certificate in this case must be accepted as sufficient to bar a motion for dismissal, and throw on the parties the necessity of seeking some other method of relief, if either thinks the record before us essentially defective.

We are considering only cases where the omissions may, for aught which appears, be of such character as the supreme court encourages, and where the clerk's certificate is modified accordingly. What ought to be held where the omissions are, on the face of the transcript, plainly substantial, and the clerk's qualified certificate takes color therefrom, may appear further on.

The rules of the supreme court (No. 8, par. 3, 3 Sup. Ct. vii.) provide as follows: "No cause will hereafter be heard until a complete record, containing, in itself, without references aliunde, all

the papers, exhibits, depositions, and other proceedings which are necessary to the hearing in this court, shall be filed." Paragraph 1 of the same rule requires the clerk of the lower court to transmit, in making return of a writ of error, "a true copy of the record" "and of all proceedings in the cause." The precise phraseology of the paragraph referred to was adopted in this court. Rule 14, pars. 1, 3.[1] The qualification contained in the words already quoted, "which are necessary to the hearing," raises the questions: To what portions of what precedes it does this qualification attach? Who is to determine, in the first place, what are necessary? In the event such determination is erroneous in any case, what is the remedy? We will consider these questions only with reference to appeals in equity causes, as this at bar is of that character, though some of our observations may also apply to writs of error, and even to admiralty appeals.

The filing of the record in the appellate tribunal is a jurisdictional necessity. Hill v. Railroad Co., 129 U. S. 170, 174, 9 Sup. Ct. 269. And it is ordinarily said that it must be filed during the return term, and that, if it is so filed, it is seasonable, notwithstanding the requirements of the rules of the supreme court (No. 9, par. 1), and that of this court (No. 16, par. 1), unless the party appealed against seasonably moves as also provided in each (Sparrow v. Strong, 3 Wall. 97). In U. S. v. Vigil, 10 Wall. 423, the supreme court, under very special circumstances, refused to dismiss an appeal, although the record was not filed until about two years after the end of the next term after the allowance of the appeal. We need not, however, consider the practice touching such matters, except that they all lead to the fact that it is a jurisdictional necessity that the record be filed at some time. The appeal in the case at bar relates to proceedings subsequent to a mandate from the supreme court, which disposed of the merits of the cause, and left open for the court below only the closing of certain matters of detail. In such instances what follows the mandate is all which ordinarily comes up on a subsequent appeal (Supervisors v. Kennicott, 94 U. S. 498; Union Pac. Ry. Co. v. U. S., 116 U. S. 402, 6 Sup. Ct. 631); and therefore, to insert ordinarily in the record matter which preceded the mandate, including especially the proofs taken on the main issues in the cause, would be not only unnecessary, but improper. In the case at bar the order of the supreme court directed subsequent proceedings to be taken in accordance with its opinion; so the opinion was, in effect, a finding of facts, and, in substance, a part of the mandate. It was, therefore, properly incorporated in the record, and we find it here, except some parts, which we may, in the absence of any suggestion otherwise, consider unimportant for our purposes. The master's report is also in the record before us, but, as the only matter in controversy—that of interest—was settled by the court, and not by the master, his report and all proceedings before him might have been omitted; so that, even if the proceedings before the master are imperfectly set out, it is immaterial. On the ques-

[1] 47 Fed. vii.

tion of interest, the bill and answer, besides the opinion of the supreme court, would necessarily be read to the court below; and these we find in the transcript. There is no implication nor suggestion that that court had read to it or had brought to its attention on this branch of the case any other papers, proofs, or proceedings whatever. If any were so read or brought to its attention, the portions so used should be in the record. In that event the appellee, as stated in the opinion filed in this case September 6, 1892, had a remedy by certiorari, and perhaps other remedies, hereafter suggested; but, without first resorting to these, the appellee certainly had no ground for relief by dismissal of the appeal.

There are certain other omissions in that part of the record which follows the mandate, but, so far as the court can perceive, they relate to continuances and other immaterial matters, and no specific suggestion has been made that any one is of a substantial character. Many cases may be suggested where the appellant should bring before this court only portions of the proceedings in the court below. Ordinarily, the whole of the record, as the word is technically used, in suits at common law, and of the corresponding portions of proceedings in equity, the latter as designated by Rev. St. § 750, should be brought here, in order that this court may properly shape its judgments, excepting, of course, what precedes the mandate on a prior appeal or writ of error. But take the instance of a defendant in equity who has pleaded to the whole bill, and whose plea has been overruled as a matter of law, and has been followed by voluminous proofs on the issues of fact raised by the bill and answer. He may be content on his appeal to rest on his plea, and in that event he neither need nor ought to bring here the mass of the proofs following it. This conforms to the ruling in Railway Co. v. Dinsmore, 108 U. S. 30, 2 Sup. Ct. 9, where apparently the case was disposed of on demurrer, and the court held that the evidence on file was not to be brought before it; and it is emphatically enforced in those cases where the supreme court has condemned the bringing up of unnecessary papers and proceedings. Railway Co. v. Stewart, 95 U. S. 279, 284; Craig v. Smith, 100 U. S. 226, 230; The Adriatic, 103 U. S. 730; Ball & Socket Fastener Co. v. Kraetzer, 150 U. S. 111, 118, 14 Sup. Ct. 48.

The act of March 3, 1803 (2 Stat. 244), provided that on appeals to the supreme court in cases of equity, of admiralty and maritime jurisdiction, or of prize or no prize, "a transcript of the libel, bill, answer, depositions, and all other proceedings of what kind soever in the cause" should be transmitted. While this statute was in force, in 1823, the supreme court framed a rule in terms the same as present rule 8, par. 3, already referred to. Craig v. Smith, 100 U. S. 226, 231. This added the qualification, which was not found in the statute, "which are necessary to the hearing in this court," and which, as already stated, appears in the corresponding rule of the court of appeals. This qualification was, however, subsequently adopted by the act of February 26, 1853 (10 Stat. 163), as follows:

"In equity and admiralty causes only the process, pleadings, and decree, and such orders and memorandums as may be necessary to show the juris-

diction of the court and regularity of the proceedings, shall be entered upon the final record; and in case of an appeal, copies of the proofs, and of such entries and papers on file as may be necessary on hearing of the appeal, may be certified up to the appellate court."

In the Revised Statutes this, and what remained of the act of 1803, were distributed as follows:

"Sec. 698. Upon the appeal of any cause in equity, or of admiralty and maritime jurisdiction, or of prize or no prize, a transcript of the record, as directed by law to be made, and copies of the proofs, and of such entries and papers on file as may be necessary on the hearing of the appeal, shall be transmitted to the supreme court."

"Sec. 750. In equity and admiralty causes, only the process, pleadings and decree, and such orders and memorandums as may be necessary to show the jurisdiction of the court and regularity of the proceedings, shall be entered upon the final record."

In view, therefore, of the rules referred to, and the qualification which they contain, also already referred to, and of the statutes enacted subsequent to the origin of the rules, confirming the qualification which has been explained, and in view also of the expressions of the supreme court, it is clear that the transcript on appeal need not always contain all the proofs, entries, papers, and proceedings below, as will be more specially pointed out in answering the second of the three questions proposed. A practical construction of the statute qualification is found in the supreme court rule 8, already referred to (paragraph 6), adopted as the sequel to the act of February 16, 1875, c. 77, § 1 (18 Stat. 315).

Who, then, is to determine, in the first place, what may be omitted? The supreme court, in Railway Co. v. Stewart, 95 U. S. 279, 284, has given an answer:

"We have long suffered from the want of attention of parties or their counsel, and the incapacity, not to say dishonesty, of clerks below, in matters of this kind, and deem this a proper occasion for applying the remedy for such neglect or abuse. We are at a loss to determine whether the complainant or defendant is most to blame for the irrelevant matter which has been introduced into this case, but it is clearly the duty of the party who takes an appeal to see to it that the record is properly presented here. Care should be taken that costs are not unnecessarily increased by incorporating useless papers, and that the case is presented fairly and intelligently."

A briefer and more practical answer is given by the circuit court of appeals for the fifth circuit in Pennsylvania Co. v. American Const. Co., 2 U. S. App. 609, 5 C. C. A. 53, 55 Fed. 131, as follows:

"It may be well to impress on clerks of the trial courts that, in the absence of a controlling stipulation by the parties, or of written instructions from the plaintiff in error or appellant filed in the case, transcripts in cases of writs of error or appeal should meet the requirements of our rule 14, and that their certificates of authentication should follow the language of our rule, and show that the transcript transmitted is 'a true copy of the record, bill of exceptions, assignment of errors, and all proceedings in the case.'"

The supreme court thus says:

"It is clearly the duty of the party who takes an appeal to see to it that the record is properly presented."

The court of appeals makes of equal value a "stipulation of the parties" and "written instructions from the plaintiff in error or appellant," to be in writing, probably, for the protection of the clerk.

Considering the duty which solicitors and attorneys practicing in the federal tribunals owe to the courts and to each other, it is to be expected that ordinarily the clerk will receive joint directions with reference to facilitating and simplifying the transcript on appeal. Without such joint directions, the clerk, as already stated, ought to send up the whole of the record in the strict sense of the word, made as directed by Rev. St. § 750 (Keene v. Whitaker, 13 Pet. 459; Curtis v. Petitpain, 18 How. 109), having, of course, reference to the limitation imposed by the fact of prior appeals, if there have been any; and the nature of any portions omitted, even under a joint stipulation, should be indicated, so that the appellate court, which has its own interests and rights in the condition of the transcript, may be advised concerning them. But as to the proofs, entries, and papers on file necessary on the hearing of the appeal, required by Rev. St. § 698, the decisions cited refer the clerk, in the absence of a joint stipulation, to the selection made by the appellant. The good faith and discretion of his solicitor are necessarily the ordinary and sufficient guide in determining this selection, though, as the clerk is made by the statute the certifying officer, some duty rests on him by implication, and he might well refuse to certify a transcript with such palpable and substantial omissions as, in his opinion, to justify his assuming the responsibility of refusal. In that event the appellant, deeming himself aggrieved, has his remedy by applying to the appellate court for a mandamus, and perhaps by seeking summary instructions to the clerk from the court appealed from. If the party appealed against deems the certificate of the clerk irregular, or the transcript incomplete, his remedy is not by motion to dismiss, unless in extreme cases; but he may have ample relief by other methods, which have been clearly pointed out by the supreme court.

In Woodward v. Brown, 13 Pet. 1, on receipt of a supplemental certificate from the clerk of the court below, the supreme court allowed an amendment of a clerical error on motion of one party. The same was permitted in Chicago v. Bigelow, 131 U. S. Append. xciii. Substantial omissions have been made good by amendments filed with the consent of both parties. Hudgins v. Kemp, 18 How. 530, 534. And this has been done under some circumstances with reference even to defects originating in the proceedings of the court below. U. S. v. Hopewell, 2 C. C. A. 510, 51 Fed. 798, and cases there cited. In Railroad Co. v. Schutte, 100 U. S. 644, the court directed the appellant to bring up proofs claimed to have been omitted, according to a statement thereof to be filed by the appellees, and for failure to do so it imposed the penalty of dismissal of the appeal. Yet it carefully reserved the power to make special orders as to costs, if in this way unnecessary papers were brought up. But the appropriate and ordinary remedy for an appellee in the case of a defective transcript is to suggest diminution, and ask for certiorari, though the court may sometimes order the latter of its own motion. Morgan v. Curtenius, 19 How. 8; Railway Co. v. Dinsmore, 108 U. S. 30, 2 Sup. Ct. 9; Hoskin v. Fisher, 125 U. S. 217, 223, 8 Sup. Ct. 834, and many other cases, of which those cited ex-

emplify particular classes. We therefore, with this full explanation, reaffirm what was said by this court in the extracts given from the former opinion in this case, and also conclude, in the absence of any formal suggestion of diminution, that we have before us all which the court below considered with reference to the question of interest.

It is further objected that the appeal was expressly limited to a part of the decree below; but, as this was the only part from which the Nashua & Lowell Railroad Corporation could appeal, namely, that relating to interest, the expressed limitation was surplusage, and so harmless. Moreover, without considering an appeal independently of the rule of this court (No. 11) requiring an assignment of errors to be filed simultaneously with the appeal, the legal effect under that rule may be in any case a partial appeal; and it is therefore in law an unessential matter that any limitation is expressly duplicated,—that is, that it appears in the appeal proper as well in the assignment of errors.

We come now to the merits of the question raised on this appeal. The subject of this suit was certain definite sums of money. The bill sets out, specifically and by items, with a date for each, various sums claimed, divided into two classes. One class. amounting to $181,962, was disallowed by the supreme court; and one, amounting to $26,024, was allowed. It transpired that in the schedule in the bill items in the latter class for two years were omitted, and they were added by the circuit court after the mandate came down, making the total $29,676.41. No appeal was taken on that account, so it cannot affect our determination here. The bill closes with prayers for an account, and payment of the two classes of items named. There was also a further prayer that one of the respondents, Bartlett, who was the joint financial agent of the two corporations, parties to this cause, should pay over whatever other sums remained in his hands belonging to the complainant. The only other one specified was the sum of $60,000, alleged in the bill to be in his hands, of which $31,000 was alleged to belong to complainant. It was admitted in the answer that this fund existed, but it was also there stated that the respondent corporation was ready to unite in a joint demand on Bartlett therefor. There was no controversy about it, and it did not enter into the litigation. The opinion of the supreme court (136 U. S. 369, 10 Sup. Ct. 1004) shows, moreover, that everything had been adjusted except the two classes of items described. The answer admitted that the sums in dispute had been received, and it also said that the question was not about amounts, but merely as to the right to the sums named.

As stated in the former opinion in this case, September 6, 1892, the supreme court did not pass on any question of interest, but left that to be determined in the court below, as in an ordinary case of granting a new trial. There was no agreement for payment of interest. Therefore, if allowed, it must be in the way of damages for delay, or, as it is frequently described, as moratory interest. It is needless to attempt to follow or analyze the numerous state decisions touching the question of moratory interest, certainly not without tracing out the history of the peculiarities of the rules on

this topic in the particular states the decisions of whose courts may be cited.   There has been, in the main, a steady advance of the, state of the law from a disposition to allow no interest, through the stages of considering it as a matter of discretion for either the court or the jury, towards a rule of legal right.   Any one anxious to pursue this line of investigation will find it elaborately followed out in Sedg. Dam. (8th Ed.) § 282–346.   In England the condition of the law has been very fluctuating, so that decisions of English tribunals present no safe guide.   These are fully reviewed in Sedg-wick on Damages in the sections already referred to.   Before the statute 37 Hen. VIII. c. 9, interest on money lent was prohibited by the law of England, and rules have grown up overcoming with varying success the effect of that prohibition.   At one time, as stated in Craven v. Tickell (1789), 1 Ves. Jr. 60, interest was allowed at law, and, by consequence, in equity, for every debt detained, either by the contract or in damages.   The most convenient history of the · later English practice will be found in London, C. & D. Ry. Co. v. Southeastern Ry. Co., [1893] App. Cas. 429.   There the English practice was condemned, and more liberal rules approved.   The proceeding was in chancery for the settlement between two railroad corporations of disputed traffic division accounts, in many particulars singularly like these at bar.   Interest was disallowed, on the settled construction of Lord Tenterden's Act; but the lord chancellor (Her-schell) said (page 437):

"I confess that I have considered this part of the case with every inclina-tion to come to a conclusion in favor of the appellants, to the extent, at all events, if it were possible, of giving them interest from the date of the ac-tion; and for this reason: that I think that when money is owing from one party to another, and that other is driven to have recourse to legal proceed-ings in order to recover the amount due to him, the party who is wrongfully withholding the money from the other ought not in justice to benefit by hav-ing that money in his possession and enjoying the use of it, when the money ought to be in the possession of the other party, who is entitled to its use. Therefore, if I could see my way to do so, I should certainly be disposed to give the appellants, or anybody in a similar position, interest upon the amount withheld from the time of action brought, at all events.   But I have come to the conclusion, upon a consideration of the authorities, agreeing with the court below, that it is not possible to do so, although, no doubt, in early times the view was expressed that interest might be given under such circum-stances by way of damages."

Lord Watson said (page 442):

"I regret that I am unable to differ from your lordships upon the question whether interest could be given in this case by way of damages.   I think it clearly cannot, for the reasons which have been sufficiently expressed by the lord chancellor and by the learned judges of the appeal court.   To my mind, the state of the law as settled by statutes and decisions is not altogether sat-isfactory."

Lord Shand said (page 443):

"That being the state of matters, I confess that I have looked with very great anxiety to the possibility under the law of England, as I have heard it ar-gued, of giving interest in this case, for I cannot help thinking that a gross injustice is the result of withholding it.   It appears to me that it is a de-fective state of the law that one party should be entitled to retain a large sum, such as this (it might have been a smaller sum, but the principle would

be the same; it strikes one more forcibly when you come to deal with such sums as this), by simply creating delay in furnishing the requisite accounts and by refusing payment. * * * I shall only add that I regret that the law of this country in regard to the running of interest is not like the law of Scotland, with which I am more familiar. In that country it is the common and ordinary practice, in bringing an action for money which is due, to conclude not only for the payment of that money, but for the payment of interest upon it from the date of citation or service of the summons; and interest is decreed as a matter of course on whatever balance is found to be due. I may even say that it is a rule which has received general effect that, where money is shown to have been due and to have been demanded, interest runs if the demand or request of payment is not acceded to. That is the case even although too large a sum may have been demanded. If it be found that a sum short of what was demanded is due, still the law gives interest, unless the amount really due has been tendered."

These quotations sustain the proposition that generally interest should, in justice, be recoverable, at least from the time of suit commenced, where the amount is in the nature of a money demand, or can be liquidated, and though it may come from an accounting, and more is demanded than is ultimately obtained. They lay down principles broad enough to leave no distinction as between proceedings at law and in equity. While they are not binding in England, they will be found to have been applied by the supreme court of the United States; not as a matter merely of what the rules touching interest ought to be, but of what they are.

In Lincoln v. Claflin, 7 Wall. 132, the supreme court said (page 139):

"Interest is not allowable as a matter of law, except in cases of contract, or the unlawful detention of money. In cases of tort its allowance as damages rests in the discretion of the jury."

Erskine v. Van Arsdale, 15 Wall. 75, was a suit for customs duties illegally enforced. On page 77 the supreme court noted that the circuit court held that, if the jury found for the plaintiff, they might add interest. The court said this was clearly correct; but by this it probably had in view the practical result, because it concluded in terms showing a right to interest, as follows:

"Where an illegal tax has been collected, the citizen who has paid it, and has been obliged to bring suit against the collector, is, we think, entitled to interest, in the event of recovery, from the time of the illegal exaction."

In Redfield v. Iron Co., 110 U. S. 174, 3 Sup. Ct. 570, the last case was referred to as generally applicable to suits for duties illegally enforced, but interest was refused on the ground of laches, the delay having been for 26 years, and such as the court said would have justified a dismissal of the suit. Goddard v. Foster, 17 Wall. 123, was an action at law for services and a share of profits. Although only the former was recovered, the court said (page 143):

"Beyond all question the plaintiff was entitled to interest from the commencement of the suit."

In National Bank of the Commonwealth v. Mechanics' Nat. Bank, 94 U. S. 437, a depositor was held entitled to interest as against the receiver of an insolvent national bank. The court gave a brief historical statement, citing authorities containing various phases of the

law, as all such statements must, but determined the allowance as one of right (page 441), as follows:

"The treasury authority fell into an error. There should have been no discrimination between principal and interest in making the payments. The creditor had the same right with respect to both as if he had been pursuing the defaulting debtor under other circumstances. The comptroller should have done just what the law would have done if the case had not come under his cognizance."

In Holden v. Trust Co., 100 U. S. 72,—a suit on a promissory note, —the court said (page 74):

"Here the agreement of the parties extends no further than to the time fixed for the payment of the principal. As to everything beyond that it is silent. If payment be not made when the money becomes due, there is a breach of the contract, and the creditor is entitled to damages."

In White v. Knox, 111 U. S. 784, 787, 4 Sup. Ct. 686, interest was disallowed in computing a dividend on a debt from an insolvent national bank, but solely in order to preserve equality among creditors. This is plain from National Bank of the Commonwealth v. Mechanics' Nat. Bank, ubi supra, and Richmond v. Irons, 121 U. S. 27, 64, 7 Sup. Ct. 788, where, the fund being sufficient, interest was allowed the creditors from the date of the suspension of the bank; the court saying in the last case as follows:

"In the case of book accounts in favor of depositors, which was the nature of the claims in this case, interest would begin to accrue as against the bank from the date of its suspension. The act of going into liquidation dispenses with the necessity of any demand on the part of the creditors, and it follows that interest should be computed upon the amounts then due as against the shareholders to the time of payment."

Armstrong v. Bank, 133 U. S. 433, 470, 10 Sup. Ct. 450, seems to confirm our view of White v. Knox. In The Scotland, 118 U. S. 507, 6 Sup. Ct. 1174, which was a case of limited liability, interest on the value of the wreck as against the owners of the vessel was not allowed. It may well be said that admiralty has its own rules; but in this case, as appears (page 519, 118 U. S., and page 1174, 6 Sup. Ct.), the disallowance was put upon the general rule applicable everywhere. The owners had offered to pay the value of the wreck into court, and desired to do so; but the court would not permit this, and the libelants resisted. The position was the same as though the Boston & Lowell Railroad Corporation, in this case, had at the outset offered to pay into court the entire amount finally awarded against it, the Nashua & Lowell Railroad Corporation had resisted this offer, and the court had sustained it in its resistance. By the uniform current of decisions and clear principle, interest could not be recovered under such circumstances.

The settled rule in patent causes is that interest is not computed on profits except from the date of the master's report. This is plainly on the ground that such profits are regarded as in the nature of merely unliquidated damages, which, as a general rule, in the absence of special circumstances, do not bear interest as of right until after their amount has been judicially ascertained. But even this rule, as applicable to the subject-

matter of profits in infringement suits, was established at the outset in a case where the court was divided on other matters, and without any written opinion, and by only a majority of the court. Silsby v. Foote, 20 How. 378, 386. Its correctness is evidently questioned in Tilghman v. Proctor, 125 U. S. 136, 160, 8 Sup. Ct. 894.

In U. S. v. Sanborn, 135 U. S. 271, 10 Sup. Ct. 812,—an action at law for money fraudulently obtained,—interest was allowed the United States from the date of the writ, but disallowed prior to that period on the ground of laches. In this case Redfield v. Iron Co., ubi supra, was affirmed. In Redfield v. Bartels, 139 U. S. 694, 11 Sup. Ct. 683,—another suit for duties illegally exacted,—the doctrine of laches was again applied, but interest was allowed from the date of the writ for one item and the date of the amendment for the other item brought in by it. In Dillman v. Hastings, 144 U. S. 136, 12 Sup. Ct. 662, in equity, interest was allowed on the usual presumption that one occupying a trust relation earns it, or should have earned it, and the case is of no importance in this litigation. Thomas v. Car Co., 149 U. S. 95, 13 Sup. Ct. 824, was a case of a claim for rental by a car company entered against a railroad receivership, and resisted by the holders of a mortgage secured on the same railroad. A portion of the claim was disallowed and a portion allowed. Interest was disallowed. Some expressions contained in the opinion of the court might lead to the conclusion that this was because only a part of the claim was allowed; but a careful examination of it (pages 116, 117, 149 U. S., and page 824, 13 Sup. Ct.) shows that the question was disposed of upon the proposition that the claim of the car company was against a fund in the hands of the court, and that the delay in distribution was the act of the law, and the fund fell short of paying the mortgage debt. It will be noticed, also, that the equities of that case are entirely unlike those of the case at bar, because in the latter the Boston & Lowell Railroad Corporation has had the complainant's money in its own hands, which was not the fact in Thomas v. Car Co. The principle of the case was the same as underlaid White v. Knox, ubi supra.

It will therefore appear that in all the cases which we have been able to find in the supreme court, within a period sufficiently late to be supposed to be in harmony with modern views touching the law of interest, interest has been uniformly allowed, with only three exceptions, the nature of which we will hereafter refer to. The latest case is Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99. That suit, in the form in which it came before that court, was in equity for an accounting of the profits of a series of transactions in which the parties were jointly interested. It appears (page 314, 150 U. S., and page 99, 14 Sup. Ct.) that the answer of the defendant to the bill admitted many of the facts charged, and either denied others or set up new matters in avoidance thereof. As in the case at bar, the decree of the circuit court dismissed the bill. It also appears (page 341, 150 U. S., and page 99, 14 Sup. Ct.) that, while the supreme court sustained the bill, it also held that at least a portion of the matters claimed by the complainant could not be allowed on a final accounting. The opinion concluded as follows: "The account will be stated up to

the filing of the bill, and any balance shown in favor of either side will bear interest from that day." The effect of this was that, although it was a bill for an accounting, in which there were fundamental disputes between the parties, involving very large amounts, and although the bill had been dismissed by the circuit court, which dismissal was reversed by the supreme court, and although the latter court expressly noted certain items demanded by complainant which he could not be allowed for, yet it gave complainant interest from the date of the filing of the bill; and even went further, and applied the broad equity that the prevailing party should recover interest from that date on whatever might be found due him. In this particular the supreme court reverted to the fundamental principles of justice stated by it in the equity suit of Curtis v. Innerarity, 6 How. 146, where it said (page 154), as follows:

"It is a dictate of natural justice, and the law of every civilized country, that a man is bound in equity, not only to perform his engagements, but also to repair all the damages that accrue naturally from their breach. Hence every nation, whether governed by the civil or common law, has established a certain common measure of reparation for the detention of money not paid according to contract, which is usually calculated at a certain and legal rate of interest. Every one who contracts to pay money on a certain day knows that if he fails to fulfill his contract he must pay the established rate of interest as damages for his nonperformance. Hence it may correctly be said that such is the implied contract of the parties. See 2 Fonbl. Eq. 423; 1 Domat, bk. 3, tit. 5."

Sedgwick, in his work already referred to (volume 1, § 292), says:

"The American cases look upon the interest as the necessary incident, the natural growth of the money, and therefore incline to give it with the principal, while the English courts treat it as something distinct and independent, and only to be had by virtue of some positive agreement or statute."

Indeed, in the United States the active use of money is so general, the holding of it as a special deposit, so that there is no increment, is so rare, that to refuse a plaintiff or complainant interest on money unjustly detained does ordinarily a double injury,—it deprives him of the increase to which he was justly entitled, and it violates, in behalf of the defendant, a fundamental maxim of equity, by allowing him to take advantage of his own wrong. Undoubtedly many writers and authorities of the highest character regard moratory interest as allowable only ex aequo et bono, and we are not prepared to say that there is positive evidence that this is not the view of the supreme court. There are also exceptional cases, recognized even in jurisdictions where it is given apparently as matter of right, in which some strong equity will stop the running of interest. One of these exceptional cases arises in the event of laches, whether in suing or prosecuting the suit. Others are enumerated by Sedgwick, in his work already referred to (section 340), as tender at common law, an offer by a wrongdoer before trial to pay more than the jury found due, retention of money at a specified place to pay the debt, negligence to enforce a claim against sureties, and restraint of payment by law as in cases of war and garnishment. In the suit at bar, laches is not suggested, unless before demand or suit brought. As to that, the demand, if there was any, was not suffi-

ciently specific to carry interest until the bringing of the suit, on sound principles, which may be recognized everywhere. Goff v. Reheboth, 2 Cush. 475. There was also such laches and acquiescence before the suit was brought as prevented the accruing of interest before the filing of the bill, in the absence of suitable demand; but that laches before suit brought does not ordinarily affect interest from the commencement of an adversary proceeding was settled in U. S. v. Sanborn, 135 U. S. 271, 10 Sup. Ct. 812.

The alleged special equities set up here against allowance of interest in this suit, even after the bill was filed, are that much more was claimed than was finally allowed; that the subject-matter of the suit was nominally an accounting; and that the circuit court, by the decree appealed from to the supreme court, decided fully for the respondents below. These alleged equities are disregarded in Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, and other decisions of the supreme court already referred to. The claim that the circuit court determined the question of interest on equitable grounds, so that this court cannot reverse unless it has before it all the considerations which appeared to the court below, is met by what we have already said as to the state of the record. We do not discover any other specific reasons urged as the basis of the claim that this case should be excepted from the general rule as to interest.

By the decision of the supreme court in this cause, the question of the equitable rights of these parties had been disposed of, and nothing remained for the circuit court to consider and pass upon except the amount for which judgment, in accordance with that decision, should be entered. The right of equitable recovery has thus been settled by the highest tribunal, and therefore all questions as to the general equities are removed from our consideration. No intimation to the contrary having been made by the supreme court, the ordinary rule, which allows interest from the filing of the bill, must govern us.

We have already referred to the fact that the circuit court allowed the complainant below items for two years, which were omitted in its bill, making the total $29,676.41, instead of $26,024; the latter being the amount specifically claimed. The appellee insists that, if interest is allowed, it should only be upon the smaller sum; but this was a bill for an account of liquidated items. The subject-matter was peculiarly within the knowledge of the respondent corporation, and it could easily have corrected the error which the complainant made, and must have been aware of it. Therefore there seems to be no just ground for refusing allowance of interest on any part of the fund which the supreme court has conclusively decided the respondent corporation inequitably detained.

Decree of the circuit court modified, the Nashua & Lowell Railroad Corporation to have a decree against the Boston & Lowell Railroad Corporation for $29,676.41, with interest from the date of the filing of the bill to the date of the final decree, and costs in that court and this, and the bill to be dismissed as against all respondents except the Boston & Lowell Railroad Corporation, and without costs for or against such respondents in either court.