WHITE et al. v. EWING.

(Circuit Court of Appeals, Sixth Circuit.   July 15, 1895.)

No. 212.

1. VENDOR AND PURCHASER—FALSE REPRESENTATIONS—SPECULATIVE VENTURES.

Liability on deferred purchase-money notes given for town lots, to a corporation engaged in exploiting the town, cannot be avoided on the ground of misrepresentation, where the purchasers knew that the scheme was speculative in character, and the company's prospectus was wholly promissory, and did not state falsely any existing fact, and where the only other representations relied on were those published in the daily press in regard to the company's condition, capital, prospects, etc., and which were not traced to any agents of the company.

2. SAME—EFFECT OF PRIOR INCUMBRANCE—WARRANTY DEEDS.

Purchasers of town lots from a company engaged in exploiting the town were, after the company's insolvency, sued on their deferred purchase-money notes.   They set up as a defense that there was an unenforced lien on the property for purchase money due from the company's vendor to his vendor.   The company's vendor had conveyed the land to it with a covenant against incumbrances.   *Held,* that the existence of this lien was no defense, in the absence of evidence that the covenantor was insolvent.

3. VOLUNTARY APPEARANCE—WITHDRAWAL OF ANSWERS.

Where, in a suit to foreclose a vendor's lien, nonresidents served by publication voluntarily appear and file answers, the subsequent withdrawal thereof, without prejudice to the rights of complainant, and against his objection, does not take away the right acquired by him, by virtue of such appearance, to obtain a personal decree for any deficiency existing after the sale of the premises.

4. FORECLOSURE OF VENDOR'S LIENS—PERSONAL JUDGMENT FOR DEFICIENCY.

A vendor's lien expressly reserved on the face of a deed, has, in equity, the same effect as a mortgage, and therefore comes within the provision of the ninety-second rule in equity, which authorizes the entry of a personal judgment for a deficiency on the foreclosure of a mortgage in the federal circuit courts.

Cross appeals from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

John W. Yoe, John F. McNutt, and Tully R. Cornick, for appellants.

Pritchard & Sizer (Clark & Brown, of counsel), for receiver.

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

TAFT, Circuit Judge. Each of the appellants was a purchaser of a town lot in the town of Cardiff, in Tennessee, from the Cardiff Coal & Iron Company, and paid the consideration therefor,—one-third in cash, and the balance in two notes payable in one and two years after date. A lien was reserved, in favor of the company, to secure the purchase-money notes. The sale at which these purchases were made took place at Cardiff in April, 1890, and the purchasers went at once into possession. On May 21, 1891, a creditor's bill was filed by one Bosworth against the company, alleging its insolvency, and asking the appointment of a receiver, the collection and sale of its assets, and a distribution among its creditors. A receiver was appointed, and he was directed, by ancillary proceedings in the same cause, to proceed to collect the purchase-money notes due to the company for the sale of its town lots at Cardiff, from the makers thereof, and to subject the lots sold to the payment of them. Accordingly, an ancillary bill was filed by the receiver, making all the makers of the unpaid notes parties; and those who were nonresidents of the district were served by publication, under section 8 of the jurisdiction act of 1875. At a former hearing of this cause in this court, the jurisdiction of the circuit court to hear such an ancillary bill, where the amount involved in each case did not exceed $2,000, was challenged, and the question thus made was certified to the supreme court for instructions (13 C. C. A. 276, 66 Fed. 2), and the consideration of all other questions in the case was stayed until the question should be answered. We have now received from the supreme court the instruction that the circuit court, in such an action, had the jurisdiction to entertain the bill, as ancillary to the main controversy, and to render decrees against all the debtors of the company on whom it could obtain lawful service, either personal or substituted. 159 U. S. ——, 15 Sup. Ct. 1018.

There remains now to be considered only the question raised upon the merits. Many of the defendants filed answers and made defense. The only defense really pleaded in the answers was that the purchase of the lots and the execution of the notes had been induced by false representations made on behalf of the company. The evidence introduced to make this defense was very unsatisfactory, and entirely inadequate to sustain it. The prospectus of the company was wholly promissory, and did not state falsely any existing fact. Other statements contained in the daily press in regard to the company, its condition, capital, and prospects, are not traced to the agents of the company. Slight as the evidence is, it shows clearly enough that no one made any money out of the enterprise, but that

the projectors, as well as the lot owners, were all disappointed in their expectations. It was an enterprise made possible by the speculative fever so widespread at the time. Its disastrous failure was quite like that of a hundred others of like character, and is not evidence per se, of a conspiracy to defraud on the part of the promoters, but only of a buoyant self-deception in respect to the material possibilities, and an unreasonable blindness to material difficulties. All who took part in the scheme knew its speculative character, and cannot escape liability on the obligations they assumed, unless they can put their fingers on false statements of material and existing facts which induced them to make the venture. This they have utterly failed to do.

One answer of the many raises another objection. It is that the title acquired from the company is likely to fail because the entire town site is incumbered by a lien for the purchase money due from H. C. Young, vendor of the company, to Hembree, Young's vendor. The deed from Young to the company contains a covenant that the land is free and unincumbered. The record does not disclose, and it is not averred, that the lot owners had in their deeds covenants of general warranty of title from the company. If they did not, it is difficult to see how they could object to the payment of a purchase-money note on the ground that there was a lien unenforced on the property sold them. But let it be conceded that they have such general warranties from the company, and that its insolvency renders such a warranty worthless. There is still the general warranty of Young, who is not shown in any way to be insolvent, which they may rely upon to protect them from loss by eviction. In such a case it is well settled that the vendee must rely on the covenants of his deed, and cannot resist the payment of the purchase money before eviction. Topp v. White, 12 Heisk. 165; Wanzer v. Truly, 17 How. 584.

The receiver appeals from the action of the court below in refusing to give personal decrees against certain nonresident defendants, who had been served by publication, and who had personally appeared and filed answers. The record shows that the case came on to be finally heard on the bill of the complainant against the various lot purchasers, and that pending the hearing, at the suggestion of the court, the following-named defendants, E. L. French, etc.—

"Were allowed to withdraw their answers filed in this cause on June 6, 1893, but the withdrawal is allowed without prejudice to the rights of complainant, and said withdrawal is allowed over the objection of complainant."

It further appears from the record that:

"After confirmation of the report of the special commissioner showing the sale of lots in the town of Cardiff in foreclosure of vendors liens under decree heretofore rendered in the cause, it appearing that the proceeds of the sale of lots owned by the defendants hereinafter named are insufficient to satisfy the decrees heretofore rendered against them, the receiver, Boyd Ewing, by solicitor, appeared and moved the court for personal judgment against those defendants who were allowed on the hearing of June 12, 1893, to withdraw their answers theretofore filed in the cause, for the balances due from them on said decrees, after crediting the proceeds of sales of lots thereon. And said motion, being considered, was by the court overruled, to which action of the court the receiver excepts, and prays an appeal."

It is settled in the case of Creighton v. Kerr, 20 Wall. 8, 12, 13, that the leave to withdraw their answers without prejudice to the rights of the complainant did not take away the advantage which the complainant obtained by the voluntary appearance of the defendants, after service by publication, to file answers, and that, therefore, the defendants were in court personally at the time the decrees below were entered, and that the court had jurisdiction, if it was otherwise proper, to enter personal decrees against the defendants upon the complainant's bill.

Ninety-second equity rule, adopted by the supreme court April 18, 1864, provides that, in suits in equity for the foreclosure of mortgages in circuit courts of the United States, a decree may be rendered for any balance that may be found due to the complainant over and above the proceeds of the sale or sales, and execution may issue for the collection of the same. It was held in Noonan v. Lee, 2 Black, 500, and Orchard v. Hughes, 1 Wall. 73, that, without such a rule, personal decrees for the deficiency in a foreclosure suit could not be rendered by a court of equity. The present action was for the purpose of foreclosing a vendor's lien reserved in a deed, and we think that the rule applies as well to the foreclosure of such a lien as to the foreclosure of a mortgage. In King v. Association, 1 Woods, 386, Fed. Cas. No. 7,811, Mr. Justice Bradley said, while presiding on the circuit:

"The reservation of the vendor's lien in the deed of conveyance is equal to a mortgage taken for the purchase money contemporaneously with the deed, and nothing more. The purchaser has the equity of redemption, precisely as if he had received a deed, and given a mortgage for the purchase money." See, also, Ober v. Gallagher, 93 U. S. 199, 206, 207; Kirk v. Williams, 24 Fed. 437–442.

All these cases clearly show that a lien for the purchase money expressly reserved on the face of the deed has, in equity, the same effect as a mortgage; and, as the ninety-second rule applies only to the equitable foreclosure of a mortgage, we have no difficulty in holding that the foreclosure of the lien expressly reserved on the face of a deed comes within that rule. It is true that the ninety-second rule, in terms, is not mandatory upon the court; but, unless some reason to the contrary appears, we do not see why a complainant is not entitled, if such relief is properly prayed for, to a personal decree against the defendant in foreclosure for that part of the deed secured by the lien which the proceeds of the sale do not satisfy. It was error in the court below, therefore, arbitrarily to withhold this relief; and the decrees below should be modified so as to make them personal decrees for the amount of the purchase money due, and not paid by the proceeds of the sale of the lots. And it is so ordered. The costs of the appeal and cross appeal must be taxed against the appellants, White et al.