SEVERENS, District Judge.
The Tennessee Coal, Lumber & TanBarlt Company on the 8th day of November, 1889, being then the owner of a large tract of lands lying in Morgan county, Tenn., the title to some parcels of which rested under clouds arising from the claims •of other parties, and having in contemplation the purchase of certain other inlying parcels, entered into a contract with the East Tennessee Land Company for the sale to the last-named company of all of the said lands for the agreed price of $10 per acre, amounting in the whole to the sum of $125,000. A part of the purchase price was paid down, and it was stipulated in the contract that the balance should be paid in installments, with interest from the date thereof. It was further provided in the contract that the parties should meet at Knoxville on the following Í5th day of January for the purpose of executing the deed and the notes to be given for the deferred payments. At the last-mentioned date the parties met as agreed, and in execution of the contract a deed was executed for the whole of the above-mentioned tract by the Tennessee Coal, Lumber & Tan-Bark Company to the East Tennessee Land Company, in which certain •other parties joined as grantors, who held the legal title to, or had claims upon, certain parcels of the lands sold. This deed, after acknowledging the receipt of the sum of $12,000, which had already been paid, stated that the further consideration of the deed was $113,000, to be paid in three installments, evidenced by notes for that amount, and due as follows: The first, for $31,000, due April 15, 1890; the second, for $41,000, due July 15, 1890; and the third, for $41,000, due January 15,1891,—each bearing interest from November *605 8, 1889, to secure the payment whereof a specific lien was retained on the property thereby conveyed, and granted, bargained, sold, and conveyed the lands therein described, with covenants of seisin and of right to convey, of freedom from incumbrances, to warrant and defend the title, and for further assurance. The warranty of the Tennessee Coal, Lumber & Tan-Bark Company extended to all of the lands conveyed. The warranty of the other grantors was limited to the particular parcels in which they respectively claimed the title or some interest therein. The notes of the East Tennessee Land Company for the deferred payments mentioned in the deed were at the same time executed and delivered. These notes were alike in form, except in respect of the amounts and the dates when payable, which corresponded with the amounts and dates specified in the deed. One of the notes is here copied:
“$41,000. Knoxville, Tenn., January 15, 1890.
“On or before the 15th clay of July, 1890, the East Tennessee Land Company promises to pay to the order of the Tennessee Coal, Lumber and Tan-Bark Company forty-one thousand dollars, with interest from November 8, 1889, value received in deed bearing date January 15, 1890, from the Tennessee Coal, Lumber and Tan-Bark Company and others to the East Tennessee Land Company, conveying four tracts of land in Morgan county, Tennessee, known as ‘Entries Numbers 1,969, 1,968, 1,959, 2,314,’ and this note is secured by lien expressly retained in, and is subject to all equities of, said deed; but this note is based on a purchase price of ten dollars per acre, as recited in said deed, and is given for one-third of the purchase money, less six hundred and sixty-six and sixty-six one-hundredths dollars (paid in cash previously to the execution of the said deed, and credited on second payment!, under contract dated November 8th, 1889, that said land is to be paid for in three payments, and any abatement or increase in purchase money that may be brought about by determination of acreage by more careful surveys shall apply proportionately to each note, and any overpayment shall apply on the note next falling due.
“Land adversely owned, or in litigation, or in adverse possession, shall not be paid for until such adverse claims be removed of record.
“East Tennessee Land Company,
“By Frederick Gates, General Manager.”
These notes were subsequently assigned by the Tennessee Coal,. Lumber & Tan-Bark Company to Leon Jourolmon and Hu. L. McClung, the petitioners herein, as trustees. The parties who represented the East Tennessee Land Company in this purchase were Frederick Gates and J. W. Scott. These persons were cognizant of the state of the title of the lands conveyed; Scott being a practical surveyor and abstracter of titles, living in the county of Morgan, in which the lands were located. It was well known to these parties that the title to some parts of these lands was in litigation, and that, with respect to others, the title was yet to be acquired by the Tennessee Coal, Lumber & Tan-Bark Company; and it was understood that the title to all the lands covered by the deed of the Tennessee Coal, Lumber & Tan-Bark Company, which was not then perfect, was to be cleared of adverse claims, or bought in, and it was therefore stipulated in the three purchase-money notes that the “land adversely owned, or in litigation, or in adverse possession, shall not be paid for until such adverse claims be removed of record.” Possession was at once delivered of all the lands, and the Tennessee Coal, Lumber & TanBark Company proceeded to acquire and perfect the title to such as it *606 did not already hold by complete title, and no question is made now with respect to the validity and completeness of the title to all the lands covered by the deed. In November, 1893, Ferdinand Schumacher and others, general creditors of the East Tennessee Land Company, filed their bill in the court below for the purpose of winding up the East Tennessee Land Company as an insolvent incorporation; and in March, 1894, the Central Trust Company of New York also filed in the same court its bill against the East Tennessee Land Company for the purpose of foreclosing a mortgage which had been given by the last-named company to the said Central Trust Company to secure certain bonds which it had issued. These two causes were, by an order of the court, consolidated under the style of “The Central Trust Company of New York v. The East Tennessee Land Company,” and all the creditors of the East Tennessee Land Company were directed to come in by petition and file their claims. On June 11, 1894, Jourolmon and McClung, as trustees, filed their petition in the consolidated case, setting’forth the above-stated purchase and sale of lands, the execution of the three notes given for the purchase money, and the assignment thereof to them; that certain payments had been made, but that the balance still remained due. They prayed a reference to ascertain the balance due, and for a decree establishing the balance as a first lien upon the lands sold. On the same date (June 11,1894), W. H. Eussell and A. A. Hopkins, who had been appointed receivers in the consolidated case, and to whose office the defendant has succeeded, also filed a petition, and therein admitted that there was still a large balance of purchase money due unon the notes given by the East Tennessee Land Company to the tan-bark company, for the payment of which an express lien had been retained by the vendor; and they further stated that they had entered into a contract with the state of Tennessee by which they had agreed to sell to it, for the price of $80,000, a large portion of the lands which the East Tennessee Land Company had purchased from the Tennessee Coal, Lumber & Tan-Bark Company; and they prayed that their contract of sale be confirmed, and that the title to land so sold to the state of Tennessee should be vested in the state, free of the original vendor’s lien, and that an account should be taken between the East Tennessee Land Company and its vendor of the amount still due. Such a reference was ordered, and a special master appointed, who proceeded on the reference and made his report. The matter was recommitted for the purpose of making certain special inquiries, and again further recommitted for a like purpose. It is unnecessary to enter into the particular matters involved in these references, further than to say that the principal source of difficulty, and the one which is involved in the controversy here, was created by the objection raised by counsel for the receivers of the East Tennessee Land Company upon .the question as to the date from which the petitioners were entitled to recover interest upon their notes; the position taken by the petitioners being that interest should be computed according to the terms of the notes (that is to say, from the 8th day of November, 1889);- the receivers, on the other hand, contending that the petitioners were not entitled to claim interest upon the purchase price in respect of the *607 several tracts until the title thereto was cleared up and made acceptable. This position counsel for the receivers has all along maintained, and still maintains. He insisted before the master and before the court that, this being a proceeding in a court of equity, the complainants were not entitled, as standing in the place of vendors in this respect, to recover interest on the purchase price of land, the title to which was not marketable, and that they could not claim to assert a lien for the interest accruing prior to the date when it was made such. The special master held substantially in accordance with the receivers’ contention. The petitioners excepted to the master’s conclusion in this respect, and insisted upon their exception when the matter was brought on for final hearing before the court. The court adopted the conclusions of the master, overruled the petitioners’ exceptions, and entered a decree upon the basis of the master’s report, for the sum of $7,372.48, which was declared to constitute a prior lien upon the fund derived from the sale of the lands by the East Tennessee Land Company to the state of Tennessee. We gather from the record that there is sufficient already in the hands of the court, or yet to come into it, from the sale of the lands to the state, to pay any sum which the court may adjudge to be due as the balance of the money due on the purchase by the East Tennessee Land Company. From the decree establishing the balance due to be the sum of $7,372.48, the petitioners have appealed to this court, and assign for error the disallowance of interest upon those portions of the purchase money which were due for lands to which the Tennessee Coal, Lumber & Tan-Bark Company had not good title at the date of the contract, and, as to those, so limits the interest as to run from the date when a good title was shown. The details of the proceedings talien to perfect the titles of these several parcels, and the situation in which the titles to them, respectively, rested, need not be stated, as the question involved is a general one, and is independent •of the special facts which existed with respect to each or any of them.
It is the general rule that, where one party recovers judgment against another for a sum of money due upon a contract wherein there is no stipulation in regard to interest, the court will award interest at the legal rate from the time when the money became due and payable. In such a case the interest is awarded as damages consequent upon the breach of the defendant in failing to perform his obligation. The judgment in respect to that branch of the damages does not rest directly upon the obligation itself, but stands upon the footing of those damages which in other cases are found to be the result of the defendant’s fault. Consequently the rule has its exceptions, and as in other cases where there are reasons founded on the conduct of the plaintiff, or other special circumstances existing in the case, and the justice of the situation requires it, interest will be denied. This exception prevails both in courts of law and equity. Thus, in the case of Redfield v. Iron Co., 110 U. S. 174, 3 Sup. Ct. 570, which was an action to recover money alleged to have been illegally exacted for customs dues, and where the plaintiff had been guilty of laches in prosecuting his claim, it was held that, although he was entitled to recover the money illegally exacted, he should not be *608 awarded interest during the period while his laches continued. Id delivering the judgment of the court, Mr. Justice Matthews said:
“Interest is given on money demands as damages for delay in payment, being just compensation to the plaintiff for a default on the part of his debtor. Where it is reserved expressly in the contract, or is implied by the nature of the promise, it becomes part of the debt, and is recoverable as of right; but, when it is given as damages, it is often matter of discretion. In cases like the present, of recoveries for excessive duties paid under protest, it was held in Erskine v. Van Arsdale, 15 Wall. 75, that the jury might add interest, the plaintiff ordinarily being entitled to it from the time of the illegal exaction. But where interest is recoverable, not as part of the contract, but by way of damages, if the plaintiff has been guilty of laches, in unreasonably delaying the prosecution of his claim, it may be properly withheld. Bann v. Dalzell, 3 Car. & P. 376; Newel v. Keith, 11 Vt. 214; Express Co. v. Milton, 11 Bush, 49.”
The passage above quoted was repeated with approval by the supreme court in giving judgment in Redfield v. Bartels, 139 U. S. 694, 701, 11 Sup. Ct. 683. And in U. S. v. Sanborn, 135 U. S. 271, 10 Sup. Gt. 812, the supreme court, having this subject under discussion, said:
“In Redfield v. Iron Co., 110 U. S. 174, 3 Sup. Ct. 570, the question was whether the plaintiff was entitled, under the circumstances of that case, to recover interest; the action being against a collector to recover damages for an illegal exaction of customs dues. The court, after observing that interest is recoverable as of right, when reserved expressly in the contract, or when implied by the nature of the promise, said: ‘But where interest is recoverable, not as part of the contract, but by way of damages, if the plaintiff has been guilty of laches, in unreasonably delaying the prosecution of his claim, it may be properly withheld.’ ”
And the court, applying the rule, held that the government was precluded from recovering interest upon a sum which had been paid to the defendant under a misapprehension of the secretary of the treasury, where there had been a long delay in the assertion of the right to recover the money, and no showing of any reason or excuse for the delay. In the case of Erskine v. Van Arsdale, 15 Wall. 75, which was cited by the court in Redfield v. Iron Co., 110 U. S. 174, 3 Sup. Ct. 570, it whs held that interest might properly be awarded by way of damages from the time of the illegal exaction; the facts not showing that any fault could be imputed to the plaintiff. These cases afford pertinent illustrations of the general rule, and of the exception to it, in cases where the question of interest arises upon the assessment of consequential damages; and they indicate the grounds in general upon which, in such cases, interest should be awarded or withheld. And see M’Cormick v. Crall, 6 Watts, 207, 212. But the question of interest in case of suit brought upon a contract wherein the payment of interest is made the subject of express stipulation, and is thereby made part of the obligation, stands upon a different ground. In such a case it is made a matter of agreement between the parties. They are supposed to have considered all the circumstances bearing upon tire propriety of their stipulation, and this term of the contract is as binding as any other. The courts have no just right or authority to annul the agreement which the parties have, in contemplation of the circumstances in which they were dealing, seen fit to make. The distinction is clearly stated in the passages above cited from the opinion of the court in Redfield v. Iron Co., supra, and in U. S. v. Sanborn, supra. To this general *609 rule there are also exceptions, though they are few in number, and rest upon very special reasons. Thus, a court of equity, in suits for the specific performance of contracts, will sometimes grant such relief only upon condition of an abatement of interest, where the peculiar facts are such as to make it equitable that that should be done. The relief is in the discretion of the court, and it may attach such a condition to granting it as, upon grounds broader than strict law, the equitable facts indicate as just. Another exception is one recognized by the supreme court of the United States in Brown v. Hiatts, 15 Wall. 177, where it was held, in a suit brought by a citizen of one of the Confederate states against a citizen of a loyal state, that interest on a loan, although stipulated in the contract, which matured after the commencement of the war, ceased to run during the subsequent continuance of the war; this upon the ground that by the laws of war the payment of the principal debt was interdicted, and the legal duty of the defendant was therefore to withhold the debt, instead of paying it. The present case comes under the last of the general rules above stated, and is not within any recognized exception to it. The East Tennessee Land Company expressly agreed, not only to pay the principal of its notes, but also to pay the interest thereon from the date of the original contract, November 8, 1889. The court has no more right to disregard this agreement upon the subject of interest than it would have to abate a part of the principal debt if the facts had been proven which showed that the price paid for the land was improvident. In the case of Koshkonong v. Burton, 104 U. S. 668, a suit was brought in the circuit court of the United States in Wisconsin to recover the amount due on certain bonds, with, interest coupons attached, issued by the defendant township, a municipal corporation of that state. At the time when the bonds were-issued the law of Wisconsin was such that the holder was entitled, to recover interest upon the respective coupons from the date of their-maturity. Afterwards the legislature of the state passed a statute which provided'that:
“In the computation of interest upon any bond, note, or other instrument or-agreement, interest shall not he compounded, nor shall interest thereon he construed to hear interest, unless an agreement to that effect is clearly expressed: in writing.” Gen. Laws 1868, pp. 62, 63.
And it was objected by the township that therefore interest could not be recovered upon the coupons; but it was held by the court that, in view of the then existing law, the agreement, when made, became a fixed stipulation, and part of the contract, and that the statute was. invalid in so far as it impaired the binding effect of the agreement-in respect of the interest, and directed judgment to be entered upon the basis of the law existing at the date of the issue of the bonds.
We therefore conclude that the court erred in respect of the rule which it applied, and that this being a suit upon a contract, the-validity of which was not questioned, and it not being claimed that the contract in any wise misrepresents the agreement of the parties, the court had no alternative but to give it effect according to its terms. The stipulation found at the end of the notes, that “land adversely owned, or in litigation, or in adverse possession, shall not *610 be paid for until such adverse claims be removed of record,” in no wise changes the construction properly to be given to the contract in respect to the payment of interest. It simply postponed the payment of principal and interest alike until the condition should happen, and did not affect the amount which should ultimately be paid. It appears that possession of the lands described in the deed of the Tennessee Coal, Lumber & Tan-Bark Company was immediately delivered to the East Tennessee Land Company, the grantee therein, and that the latter company thereafter had undisturbed possession thereof. It is manifest upon the agreement of the parties that the perfecting of the title to some of the lands was to take place after-wards. The parties knew all this, and made their agreement about interest with reference to it. So far as we can see, nothing has happened which the parties did not contemplate, and the grantee in the deed has got what it contracted for, and according to the expected method. The doctrine is well established that where the grantee has been put in possession of land conveyed with covenants of warranty, and has not been ousted or otherwise disturbed in his possession, he cannot refuse payment of the purchase price according to his agreement by showing that some third person had title adverse to his grantor, even though he did not know of such adverse claim at the time he took his deed, if no fraud was practiced on him. Mr. Justice Nelson, in delivering the judgment of the supreme court in Patton v. Taylor, 7 How. 133, 159, stated the law to be:
' “That a purchaser, in the undisturbed possession of the land, will not be relieved against the payment of the purchase money on the mere ground of defect of title, there being no fraud or misrepresentation, and that in such a case he must seek his remedy at law on the covenants in his deed.”
And this is the settled rule of law in Tennessee, the state where the land is, and whose laws control the conveyance of it; the rule in that state 'being that:
' “When the purchaser of land has taken a deed with covenants of general warranty, under which he has been let into possession, he cannot, in the absence of fraud, before eviction, on the ground merely of defect of title in the vendor, •claim in equity to have the contract .rescinded, or to resist the payment of, or have refunded, the.purchase money. He must in such case be left to his remedy at law on the covenants of warranty in his deed.” Barnett v. Clark, 5 Sneed, 435; Merriman v. Norman, 9 Heisk. 269; Cohen v. Woollard, 2 Tenn. Ch. 686; White v. Ewing, 37 U. S. App. 365, 368, 16 C. C. A. 296, and 69 Fed. 451.
Much less could he disavow his obligation if he knew at the time <o'f taking his deed of such adverse claim, and the deed was in fact made upon the understanding between the grantor and the grantee that the grantor was to buy in the outstanding claim or title, which, when acquired, would inure to the grantee under the covenants of his deed. From these considerations it follows that the decree of the circuit court must be reversed and the cause remanded, with directions to enter a decree for the amount of the balance found to be due upon the three notes, of $31,000, $41,000, and $41,000, respectively, with interest to be computed from the 8th day of November, 1889.