NEW YORK TRUST CO. et al. v. DETROIT, T. & I. RY. CO. (two cases).

Appeal of HALLEY COAL CO. et al.    Appeal of TRIPP.

(Circuit Court of Appeals, Sixth Circuit.    June 4, 1918.)

Nos. 3099, 3100.

1. INTEREST ⬥1—NATURE OF RIGHT—CLASSIFICATION.
   There are two classes of interest, one arising out of express or implied contract to pay it, and the other usually fixed by legislation in allowing damages for breach of contract or violation of duty.

2. DAMAGES ⬥67—INTEREST—NATURE OF RIGHT—WHEN GIVEN AS DAMAGES —DISCRETION AS TO ALLOWANCE.
   When interest is expressly reserved in the contract, or is implied by nature of a promise, it is not given as damages, but becomes a substantive part of the debt itself, and is recoverable as of right; but when given in money demands, as damages for delay in payment, it is but just compensation to claimant for the debtor's default, and its allowances is often a matter of discretion.

3. INTEREST ⬥26—CREDITOR'S ACCEPTANCE OF PRINCIPAL AS AFFECTING RIGHT.
   Where interest is contractual and the creditor accepts the principal, the right still remains to recover accrued interest as a part of the debt.

4. INTEREST ⬥29—STATUTES REGULATING RATE—EFFECT.
   Gen. Code Ohio, §§ 8303–8305, and Howell's Ann. St. Mich. (2d Ed.) § 2869, allowing stipulation of a certain rate, and declaring what shall be the rate otherwise, are intended merely to regulate the legal rate, and do not mean that interest at the same stated rate necessarily enters into and becomes a part of the instruments and contracts specified, and payable in any event.

5. DAMAGES ⬥68—INTEREST STATUTE—ALLOWANCE FOR WITHHOLDING PAYMENT.
   In absence of statute, interest will be allowed as damages for improperly withholding payment of a sum certain after it becomes due.

6. INTEREST ⬥26—PAYMENT OF CLAIMS—RIGHT TO INTEREST.
   Where the manner in which parties conducted their business indicated interest on overdue bills against receivers was not contemplated, and payment of part thereof was accepted without agreement or reservation as to interest, recovery of interest thereon must be denied.

7. RECEIVERS ⬥163—PAYMENT OF CLAIMS—RIGHT TO INTEREST.
   Where payment by receivers of the principal of a debt is accepted on condition that right to interest shall not be prejudiced, but shall be determined by the court, the creditor's right to recover interest is not barred.

8. RECEIVERS ⬥163—INSOLVENCY—INTEREST ON CLAIMS.
   Under the general rule that interest on debts of an insolvent corporation in the hands of a receiver will be calculated only to the date of his appointment, holders of six months claims are entitled to interest down to that time.

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

9. RECEIVERS ☞161—INSOLVENCY—PREFERRED CLAIMS.

Debts incurred by a railroad receiver and claims for materials and supplies for operation furnished within six months prior to his appointment are payable out of the earnings of the receivership, or even in a proper case from the corpus of the company's property, in preference to mortgages foreclosed.

10. RECEIVERS ☞163—INSOLVENCY—INTEREST ON CLAIMS.

The general rule, which allows interest on six months claims from their maturity to the appointment of receivers, disallows interest thereon after that date and also on debts incurred by the receivers, as against a fund arising from the sale of the insolvent's property.

11. RECEIVERS ☞163—INSOLVENCY—INTEREST ON PREFERRED CLAIMS.

Where the property of an insolvent railroad company was converted into cash to satisfy debts whose equitable priority was recognized, and, when so converted, proceeds of sale were insufficient to pay any part of the mortgage debt, interest on six months and receivership claims will not be allowed subsequent to the appointment of the receivers; there being no diversion of income from payment of current debts, and the mortgagees not having delayed the proceedings.

Appeal from the District Court of the United States for the Eastern District of Michigan; Arthur J. Tuttle, Judge.

Suits by the New York Trust Company and others against the Detroit, Toledo & Ironton Railway Company, wherein receivers were appointed for defendant. Interest on six months and receivership claims by the Halley Coal Company, W. E. Tripp, and others were disallowed, and claimants appeal. Judgment modified and affirmed.

These cases are here on appeal from judgments denying the right to interest on six months and receivership claims. On February 1, 1908, the Knickerbocker Trust Company, as trustee named in a junior mortgage given by the Detroit, Toledo & Ironton Railway Company, instituted foreclosure proceedings on its entire line, and prayed the appointment of receivers. The appointing order authorized them in their discretion to pay out of the funds coming into their hands the expenses of operating the company's property and all approved claims arising from its previous operation, incurred at any time within six months prior to such date. About three months later a creditors' bill was filed by Courtney and others against the company. Lisman & Co. intervened to prosecute an alleged indebtedness, whose disallowance by the District Court was affirmed on appeal. Lisman v. Knickerbocker Trust Co., 211 Fed. 413, 128 C. C. A. 85. A third bill was filed on June 20, 1910, by the New York Trust Company, as trustee under a prior mortgage, which was a first lien on the Northern and Southern divisions of the company's road and a second mortgage on its Central division. In both of the last-named cases the same receivers were appointed as in the first suit, and the three cases were consolidated. On May 12, 1911, decrees of foreclosure were entered. After publication of sale had been made, the sale was adjourned for reasons satisfactory to the court on the application of the Knickerbocker Trust Company. Other adjournments were subsequently ordered. In the summer of 1912, the Central Trust Company of New York, trustee, filed a bill in the federal court for the Southern district of Ohio for the foreclosure of the mortgage covering the Central division of the road and being a first lien thereon. The same receivers were appointed as in the cases pending at Detroit. The pendency of the Ohio case compelled an amendment of the decrees theretofore rendered. As the property had been operated as an entirety, a reference to a master was necessarily made to apportion the receivership expenses on the different divisions of the road and to determine the portion of the same to be borne by the purchasers. Further amended decrees were entered about December 9, 1912. An upset price of $1,650,000 was fixed

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

for the Northern and Southern divisions of the road and of $1,550,000 for the Central division. The road and certain stocks owned by it were offered for sale on April 17, 1913. The last-named division of the road was sold at the upset price. The other divisions were sold at the upset price on June 28, 1913. No sale of the stocks, acceptable to the court, was effected until January, 1914, their selling price being $45,140. The receivership indebtedness and the six months claims aggregated on December 31, 1913, about $3,800,-000, and at the time the receivership terminated over $4,000,000. The road was continuously operated by the receivers at a loss.

The purchasers at the foreclosure sales co-operated with a reorganization committee and transferred their bids to a new company, known as the Detroit, Toledo & Ironton Railroad Company. The decrees rendered in both the Michigan and Ohio courts provide that the funds arising from the sale of the railway company's property shall be applied, prior to payment on any of the mortgages, to the satisfaction of (a) costs, disbursements, allowances, receivers' fees, and trustee's compensation; (b) receivers' certificates (subject to the right to question the priority of the lien of those of a specified issue); (c) claims for expenses incurred by and obligations of the receivers in maintaining and operating the company's property; and (d) claims, liens or charges set up by intervention against such property, its proceeds or its income arising during the receivership, whether they accrued during the receivership or within six months prior thereto. The court reserved the right to resume possession of and resell the company's property or any part thereof for the payment of any and all such claims adjudged to be superior to the mortgage liens, and ordered that, if any such indebtedness or obligations of the receivers should not be paid on such distribution, the purchaser should pay the same, and that the property or such portion of it as the court might determine should stand charged therewith. The excess of the items (a), (b), (c), and (d) over the selling price of the property was paid out of funds contributed by such holders of bonds and receivers' certificates as entered the reorganization scheme and whose contributions varied from 10 per cent. to 35 per cent. of their holdings. The reorganization scheme and all decrees and orders entered by the court provided for the payment of interest on the receivers' certificates but not on any other indebtedness or claims. The Public Utilities Commission of Ohio, in authorizing the new company to issue bonds, also directed the payment of the six months claims, but made no mention of interest on the same. On June 19, 1911, a special master was appointed to ascertain and report all claims, liens, and charges upon the company's property, the proceeds of its sales, or its income pending the receivership. Some of the claims, set up in case No. 3099, were incurred by the receivers; others prior to their appointment. The Tripp claims, set up in case No. 3100, arose during the receivership. The contracts with the Foundry Company were made in Michigan; all others in Ohio. On May 29, 1915, the master reported, allowing the appellants' claims, but denying interest on them. Payment of the principal sum due was accepted by each appellant with a reservation and agreement, excepting in the case of the Tripp claims, that such acceptance was without prejudice to the right to demand interest, or to invoke the court's action thereon. All of the claims matured in a short specified time after delivery of the supplies furnished. In so far as the record shows, none of the claimants demanded interest until after the master was appointed. The District Court overruled the exceptions to the disallowance of interest and affirmed the master. Hence the appeals.

Beaumont, Smith & Harris, of Detroit, Mich., Keifer & Keifer, of Springfield, Ohio, Charles Wright, Jr., of Detroit, Mich., and Johnson & Jones, of Ironton, Ohio, for appellants.

Alfred A. Cook, of New York City, and Leo M. Butzel, of Detroit, Mich. (Emil Goldmark, of New York City, of counsel), for appellee.

Before WARRINGTON and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge (after stating the facts as above). The Detroit, Toledo & Ironton Railroad Company (the new company) resists the appellants' claims for interest. The question as to whether any of such claims was improperly given an equitable priority by the trial court, as between its owner and the bondholders, need not be considered, as no issue is made on that point.

[1-3] There are two well-defined classes of interest. In the one, it arises out of some contract, express or implied, to pay it. In the other, it is allowed as damages for some breach of contract or the violation of some duty, and is usually fixed by legislation. Jones v. Mallory, 22 Conn. 386, 392; County of Redwood v. Winona, etc., Co., 40 Minn. 512, 522, 41 N. W. 465, 42 N. W. 473; Perley on Interest, 5; Sanders v. L. S. & M. S. Ry. Co., 94 N. Y. 641; Sedgwick on Damages (9th Ed.) §§ 282, 295. When it is expressly reserved in the contract, or is implied by the nature of a promise, it is not given as damages, but becomes a substantive part of the debt itself, and is recoverable as of right; but, when it is given on money demands as damages for delay in payment, it is but just compensation to the plaintiff for a default on the part of his debtor, and its allowance is often a matter of discretion. Redfield v. Ystalyfera Iron Co., 110 U. S. 174, 176, 3 Sup. Ct. 570, 28 L. Ed. 109; Redfield v. Bartels, 139 U. S. 694, 701, 11 Sup. Ct. 683, 35 L. Ed. 310; Jourolmon v. Ewing, 80 Fed. 604, 607 et seq., 26 C. C. A. 23 (C. C. A. 6); Perley on Interest, 5, 6; Sedgwick on Damages, § 282: Daniel, Neg. Inst., § 919. When interest is contractual and the creditor accepts the principal, the right to recover interest (if any has accrued) still remains for the reason it is as much a part of the debt as the principal itself. See cases last above cited and King v. Phillips, 95 N. C. 245, 59 Am. Rep. 238; 2 Edwards on Bills and Notes, § 1012; Southern Central R. Co. v. Town of Moravia, 61 Barb. (N. Y.) 180; Fake v. Eddy, 15 Wend. (N. Y.) 76.

[4] The foregoing statement of the law has been deemed advisable because the appellants contend that their contracts for supplies must be read as if the state statutes relating to interest were imported into them, and that, so read, their respective contracts provided for interest upon any default of payment, and that therefore their right to interest is contractual. The Ohio General Code provides that parties may stipulate for the payment of interest at any rate not exceeding 8 per cent. per annum, payable annually (section 8303), and that all judgments upon contracts made as provided in that section shall bear interest at the stipulated rate (section 8304). Section 8305, which deals with cases other than those mentioned in sections 8303 and 8304, provides inter alia that the owners of claims, such as the appellants have, when the same become due and payable, "shall be entitled to interest at the rate of six per cent. per annum, and no more." Section 2869, Howell's Michigan Stat. Anno. (2d Ed.) declares that the interest rate shall be 5 per cent. per year, but parties may stipulate for the payment of any rate not exceeding 7 per cent. A fair interpretation of decisions touching the interest laws of such states warrants the conclusion that the legislative intent, in the enactment of the above-mentioned statutes, was merely to regulate the legal rate of interest.

McClelland v. Sorter, 39 Ohio St. 12; Bunn v. Kinney & Lod-wick, 15 Ohio St. 40, 42; Samyn v. Phillips, 15 Ohio St. 218, 222; Graveson v. Odd Fellows Temple Co., 4 Ohio N. P. 112; Hogg v. Zanesville Canal & Mfg. Co., 5 Ohio, 410, 424; Miller v. Tiffany, 68 U. S. (1 Wall.) 298, 310, 311, 17 L. Ed. 540; Cameron v. Merchants' & Mfrs.' Bank, 37 Mich. 239; Eaton v. Truesdail, 40 Mich. 1, 8; Sedgwick on Damages, § 293. In Herman H. Hettler Lumber Co. v. Olds, 242 Fed. 456, 458, 155 C. C. A. 232, after consideration of Kermott v. Ayer, 11 Mich. 181, and Tousey v. Moore, 79 Mich. 564, 44 N. W. 958, in each of which it was said that interest in that state is purely statutory, this court concluded that no more was meant than that the rate is to be determined by the terms of the Michigan statute. The statutes mentioned cannot be held to mean that interest at the stated rate necessarily enters into and becomes a part of the instruments and contracts therein specified and shall in any event be paid. Contracting parties are still at liberty to designate any rate that is not usurious or to agree that no interest whatever shall be paid, and their course of dealings may be such as wholly to debar the recovery of interest in the absence of a stipulation to the contrary.

[5] Were there no statute on the subject, interest would be allowed in a proper case by way of damages, in accordance with the practice in the United States, for improperly withholding the payment of a sum certain after the same becomes due. Young v. Godbe, 82 U. S. (15 Wall.) 562, 565, 21 L. Ed. 250; United States v. North Carolina, 136 U. S. 211, 216, 10 Sup. Ct. 920, 34 L. Ed. 336; Herman H. Hettler Lumber Co. v. Olds, supra. In American Iron Co. v. Seaboard Air Line, 233 U. S. 261, 264, 34 Sup. Ct. 502, 58 L. Ed. 949, reliance was placed on the Virginia statute fixing the rate of interest, but it was said the statute threw no light on the right to recover interest for the period of the receivership. It follows that no contractual right to interest exists in favor of any of the appellants on account of state statutes; nor is it shown or claimed that any of them at any time stipulated that interest should be paid on the amount of any bill or invoice of goods sold and delivered, if payment of the same should be delayed. If, therefore, interest should be allowed to the appellants, it must be in the way of damages.

[6] Between March 30, 1909, and November 1, 1912, the appellant Tripp made 112 sales of cross-ties to the receivers. No payments were made on the due dates of the invoices, the delay in payment being from 4 to 11 months. Prior to the entry of the decrees of foreclosure on or about December 9, 1912, all of the ties had been furnished and 88 payments had been made and accepted without any demand for interest on any invoices. The sums called for in the remaining 24 claims respectively were paid December 24, 1912. The manner in which the parties conducted their business indicates that an interest charge on overdue bills was not contemplated, and it is not to be presumed that when the court decreed the payment of "all claims for expenses incurred by, and obligations of, the receivers, * * * which the court shall adjudge to be valid claims against the said receivers," it intended to adjudge, as valid, claims which had already

been paid, or, in view of the course of business pursued, to hold the owner of such alleged but actually paid claims or of the 24 remaining unpaid to be entitled to interest on them for any period whatsoever. As the principal sum of the several Tripp claims (all of which are asserted in case No. 3100) was accepted by him without any agreement or reservation that such acceptance should not affect the question of the payment of interest or his right to demand the same, recovery of interest on them must be denied. Southern Ry. Co. v. Dunlop Mills, 76 Fed. 505, 22 C. C. A. 302 (C. C. A. 4); Tredegar Co. v. Seaboard Air Line R. Co. 183 Fed. 289, 293, 105 C. C. A. 501 (C. C. A. 4); Stewart v. Barnes, 153 U. S. 456, 14 Sup. Ct. 849, 38 L. Ed. 781; Thomas v. Cincinnati, N. O. & T. P. Ry. Co. (C. C.) 81 Fed. 911, 917; King v. Phillips, 95 N. C. 245, 59 Am. Rep. 238; Talbot v. Bay City, 71 Mich. 118, 38 N. W. 890; Sedgwick on Damages, § 339a; Thompson, Corp. (2d Ed.) § 6616.

[7, 8] Disposition cannot be thus made, however, of the claims set up in case No. 3099, for the reason that the payment of the principal sum of each of them was accepted on the condition that the appellants' right to interest should not be prejudiced thereby, but should be determined by the court. Tredegar Co. v. Seaboard Air Line Ry. Under the general rule that interest on debts of an insolvent corporation in the hands of a receiver will be calculated only to the date of his appointment, the holders of the six months claims are entitled to interest down to that time. Thomas v. Western Car Co., 149 U. S. 95, 116, 117, 13 Sup. Ct. 824, 37 L. Ed. 663; Grand Trunk Ry. Co. v. Central Vermont R. Co. (C. C.) 91 Fed. 569; Tredegar Co. v. Seaboard Air Line Ry. Co., supra; New York Security & Trust Co. v. Lombard Inv. Co. (C. C.) 73 Fed. 537; Malcomson v. Wappoo Mills (C. C.) 99 Fed. 633; Thompson, Corp. (2d Ed.) §§ 6446, 6616; Solomons v. Am. Bldg. & Loan Ass'n (C. C.) 116 Fed. 676; Huff v. Bidwell, 218 Fed. 6, 9, 133 C. C. A. 646 (C. C. A. 5); Spring Coal Co. v. Keech, 239 Fed. 48, 51, 152 C. C. A. 98, L. R. A. 1917D, 1152 (C. C. A. 4). The rule is analogous to that in bankruptcy which allows interest on claims down to the filing of the petition only, excepting in certain cases claims of the highest dignity. Loveland, Bank. (4th Ed.) 628-630, 1110; Barton v. Barbour, 104 U. S. 126, 134, 26 L. Ed. 672; American Iron & Steel Mfg. Co. v. Seaboard Air Line Ry. Co., 233 U. S. 261, 34 Sup. Ct. 502, 58 L. Ed. 261.

[9] There remains, however, for decision, the question: Should the unsecured claims asserted in case No. 3099, under the facts of record, bear interest from their due date to the present time? In this circuit the rule prevails that debts incurred by a receiver of a railroad company and claims which accrued for materials and supplies furnished within six months prior to the receiver's appointment for carrying on its operations are payable out of the earnings of the receivership, or even, in a proper case, from the corpus of the company's property in preference to the mortgages foreclosed. Central Trust Co. v. East Tennessee V. & G. R. Co., 80 Fed. 624, 630, 26 C. C. A. 30; International Trust Co. v. T. B. Townsend Brick & Contracting Co., 95 Fed. 850, 857, 37 C. C. A. 396. The reason assigned for the displace-

ment of prior mortgage liens by the court declaring an equitable priority in favor of such debts and claims is so well stated by Judge (later Mr. Justice) Lurton in the last-named case (95 Fed. 858, 859, 37 C. C. A. 396), with a pertinent citation of leading authorities, and in the Central Trust Co. Case, 95 Fed. 628, 37 C. C. A. 396, that a restatement of the same is deemed unnecessary. The trial court acted on the theory at the time the receivers were appointed that the earnings of the railway company would exceed the legitimate operating expenses incurred pending the receivership and within six months prior thereto, or that in any event the proceeds arising from the sale of the road would exceed·the aggregate of all liabilities thus incurred. There were, however, no net earnings. Indeed, the cost of operating the railway company so far exceeded its income that its selling price was less than the sum required to satisfy the cost of litigation, taxes, receivers' certificates, necessary receivers' expenditures and liabilities, and six months claims. Not only did the bondholders lose their entire investment, but such of them and of the holders of receivers' certificates as entered the plan of reorganization, by contributions made in the hope of improving their condition and ranging from 10 per cent. to 35 per cent. of their holdings, provided the necessary funds to purchase the insolvent company's property, and also the further sum of about $800,000 to satisfy the claims given a priority by the court and ordered by it to be paid.

[10] The right to payment of the principal sum of appellants' claims is conceded and, as we have seen, the six months claims under the general rule bear interest from their maturity to the date of the receivers' appointment; but the same rule disallows interest on them after that date and also on debts incurred by the receivers, as against the fund arising from the sale of the insolvent's property, for the reason the delay in distribution is the act of the law and a necessary incident to the settlement of the estate. Thomas v. Western Car Co., 149 U. S. at pp. 116, 117, 13 Sup. Ct. 824, 37 L. Ed. 663. An analysis of that case shows that disposition was made of the question involved on the ground that the unsecured claim of the car company for car rentals was against a fund in the hands of the court, that the delay in distribution was the delay of the law, and that the fund brought into court fell short of paying the mortgage debt (Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp., 61 Fed. 237, 250, 9 C. C. A. 468 [C. C. A. 1]), all of which features are present in each of the present appeals. The general rule there stated applies, however, only to a case where the fund is insufficient to pay all of the claims and the creditors are all of the same rank. Richmond & I. Const. Co. v. Richmond N. I. & B. R. Co., 68 Fed. 105, 116, 15 C. C. A. 289, 34 L. R. A. 625 (C. C. A. 6). Had there been any claims of the standing of receivers' certificates considered in that case, as in this, on which, before liability therefor was incurred, the court had directed that interest should be paid, it would doubtless have been allowed. The rule announced in the Thomas Case still subsists—American Iron Co. v. Seaboard Air Line Ry., 233 U. S. 261, 266, 267, 34 Sup. Ct. 502, 58 L. Ed. 949; Pennsylvania Steel Co. v. New York City Ry. Co., 216 Fed. 458, 471, 132 C. C. A. 518 (C. C. A. 2)—and binds the appellants unless they come within some

exception to it. They appeal to the announcement in National Bank v. Mechanics National Bank, 94 U. S. 437, 439, 24 L. Ed. 176, that interest lawfully accruing upon a claim is as much a part of it as the original debt and that a creditor has the same right to the payment of the one as of the other. That was a case in which the debts were against an insolvent national bank and were all of the same footing and funds were available for the payment of interest. But cases arising out of the settlement of insolvent national banks are inapplicable. They have proceeded according to the construction placed by the courts on the national banking act and not in accordance with the general principles of equity. Spring Coal Co. v. Keech, 239 Fed. 48, 50, 51, 152 C. C. A. 98, L. R. A. 1917D, 1152 (C. C. A. 4).

[11] It is urged, however, that this court is committed to the allowance of interest on claims, such as appellants have, by the decisions rendered by it in Central Trust Co. v. Condon, 67 Fed. 84, 98, 14 C. C. A. 314, Richmond & I. Const. Co. v. Richmond N. I. & B. R. Co., 68 Fed. 105, 114, 15 C. C. A. 289, 34 L. R. A. 625, and Jourolmon v. Ewing, 85 Fed. 103, 29 C. C. A. 41. These cases on their facts and in the character of the claims considered in them on which interest was allowed are readily distinguishable from the cases made by appellants. Each of the three cases had been before the court on a prior occasion. An examination of the first of the cases in connection with Central Trust Co. v. Bridges, 57 Fed. 753, 6 C. C. A. 539, and of the second in connection with Central Trust Co. v. Richmond N. I. & B. R. Co., 68 Fed. 90, 15 C. C. A. 273, 41 L. R. A. 458, discloses that in each instance the debt on which interest was allowed was a mechanic's lien arising out of the construction of the road, which, in the first case under the statute of Tennessee and in the second under the statute of Kentucky, was prior and superior to that of the mortgage whose foreclosure was sought. Debts contracted for original construction do not fall within the same class as preferential claims necessarily incurred to keep the road a going concern—Thompson, Corp., § 6450, and cases cited; First Nat. Bank v. Ewing, 103 Fed. 168, 186, 43 C. C. A. 130 (C. C. A. 5)—and it was due to statutory provisions that in the two above-mentioned cases priority was given to construction claims with interest (Cook, Corp. [7th Ed.] vol. 4, §§ 859, 860, at page 3260). The rule applied in those cases was approved in American Iron Co. v. Seaboard Air Line Ry. Co., 233 U. S. 261, 267, 34 Sup. Ct. 502, 58 L. Ed. 949, and Spring Coal Co. v. Keech, 239 Fed. 50, 62, 152 C. C. A. 98, L. R. A. 1917D, 1152 (C. C. A. 4). The notes on which interest was allowed in the Jourolmon Case, the first report of which is found in 80 Fed. 604, expressly called for interest and were secured by a prior lien on the premises sold, and, as appears from Judge Severens' statement (85 Fed. at page 106, 29 C. C. A. 41), disposition of all three of the cases was made in accordance with the rule that, where there are claims with liens of different priorities, the holders of such liens are entitled to interest down to the date of the decree. The lien involved in each of the three cases on which interest was allowed was not merely an equitable priority declared by the court, but had an absolute priority over other existing liens.

The American Iron Co. case, on which much stress is laid by the appellants, is not helpful to them on account of the dissimilarity of situations. In that case the road was so profitably operated by the receivers that it was returned to its owners. Interest was paid out of the earnings on much of its floating indebtedness and all interest due at the time of the appointment of the receivers and accruing during the receivership on the bonded indebtedness was also paid. The claim considered was protected by a mechanic's lien secured under the laws of Virginia and given a priority over the mortgage bonds and was termed a debt of the highest dignity, as were those involved in the Condon and the Richmond & I. Const. Co. cases. As a result of good fortune or good management the railway company's estate proved sufficient to discharge valid claims against it in full, and creditors were therefore entitled to interest as well as principal. Nor are the appellants aided by the Tredegar Co. case. The mechanic's lien there considered was also perfected under the Virginia statute, but was not superior to that of the mortgage on the company's property. Interest was allowed down to the date of the receivership, but, in consequence of the general rule stated in the Thomas case, not thereafter. The interest was contractual, else it could not have been recovered after payment of the principal had been made.

The case of Pennsylvania Steel Co. v. New York City Ry. Co., reported in 208 Fed. 168, and again after it reached the Circuit Court of Appeals, in 216 Fed. 458, 132 C. C. A. 518, throws no light on the question for decision. The holders of claims for material and supplies bought shortly before the receivership for use in operating the road did not ask the displacement of any prior lien or for payment out of other than unmortgaged property (208 Fed. 183), and the fund was sufficient to pay them in full, with interest, and leave a balance over for general creditors (216 Fed. 471, 132 C. C. A. 518).

The appellants cannot, for the recovery of interest, avail themselves of the doctrine first formulated in Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339, and applied in Southern Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458, that, where there is a diversion of income, restoration of the income so diverted must be made for the payment of six months claims and expenditures for supplies during the receivership. There is no evidence that any such diversion occurred or that any appellant has in that manner been deprived of any of his equitable rights. If there has in reality been no diversion, there can be no restoration directed for any purpose. Fosdick v. Schall, 99 U. S. 254, 25 L. Ed. 339.

The contention that the mortgagees delayed the receivership proceedings, the sale of the railway company's property and the distribution of the proceeds arising therefrom must also fail. The court proceedings were protracted, for which none of the appellants was responsible; but there is no evidence that the mortgagees, or any of them, provoked a vexatious, unreasonable or unnecessary delay and thereby postponed the payment of claims. The several postponements were for satisfactory reasons sanctioned by the presiding judge, and the distribution of the railway company's estate was thereby in each instance quite as effectually stayed as were the proceedings in Grand

Trunk Ry. Co. v. Central Vermont Ry. Co. (C. C.) 91 Fed. 569, by the orders made in that case, in which the allowance of interest on six months claims on account of such stays was denied. The litigation in the instant case was not without complications and was inaugurated at a time when the country was in financial stress and when financial relief for large embarrassed enterprises was with difficulty obtained. At the inception of the receivership, in subsequent orders and decrees, in the plan of reorganization and in the order made by the Public Utilities Commission of Ohio, the costs, taxes, receivers' fees, trustees' compensation, receivers' certificates, expenses incurred by and obligations of the receivers, and six months claims, were ordered paid, but not in the same order. The aggregate amount of the different issues of the receivers' certificates is not shown by the record, but the inference is warranted by statements of counsel that the major part of the funds realized by the sale of the company's property was necessary to their satisfaction. Had they not been made interest-bearing, it is not likely they could have been sold; and had any of the appellants, prior to the master's appointment, asserted a right to interest, his request in that behalf, under the circumstances of this case, would necessarily have been rejected, except as to interest down to the time of the appointment of the receivers on such claims as had previously matured. If the court at the inception of the receivership had foreseen the course the administration of the insolvent estate would take and that the claims of appellants would have to be paid, not from the earnings but from the corpus of the estate, it might have dealt less generously regarding them. Cook, Corp. (7th Ed.) § 861, p. 3274; Gregg v. Metropolitan Trust Co., 197 U. S. 183, 25 Sup. Ct. 415, 49 L. Ed. 717.

It was said in Redfield v. Ystalyfera Iron Co., 110 U. S. 176, 3 Sup. Ct. 570, 28 L. Ed. 109, that the allowance of interest as damages is often a matter of discretion, and in Jourolmon v. Ewing, 80 Fed. 604, 607, 26 C. C. A. 23, 27, Judge Severens, speaking for this court regarding the rule that interest, when not stipulated, will generally be allowed as damages, said:

"The rule has its exceptions, and as in other cases where there are reasons founded on the conduct of the plaintiff, or other special circumstances existing in the case, and the justice of the situation requires it, interest will be denied."

See, also, New Orleans v. Fisher, 180 U. S. 185, 198, 21 Sup. Ct. 347, 45 L. Ed. 485.

The property of the insolvent railway company passed into and was retained in the hands of the court's receivers until it could be converted into cash to satisfy the debts whose equitable priority was recognized, and, when so converted, the proceeds of the sale were insufficient to pay any part of the mortgage debt. The strong equity mentioned in Nashua & Lowell R. Corp. v. Boston & Lowell R. Corp., 61 Fed. 251, 9 C. C. A. 468, which will stop the running of interest in exceptional cases, even where it is ordinarily given as a matter of right, was present.

In case No. 3099, the judgment of the District Court is modified, to the extent that interest may be computed on claims due prior to the

appointment of the receivers down to that date; otherwise, it is affirmed, and a mandate may issue directing the lower court to proceed in accordance with the foregoing. Each side will pay the costs and expenses incurred by it. In case No. 3100, the judgment is affirmed, and costs are taxed against the appellant.